JOHN CALTABIANO ET AL. *v.* PLANNING AND ZONING COMMISSION OF THE TOWN OF SALEM ET AL.
(13604)

PETERS, C. J., SHEA, GLASS, COVELLO and HULL, Js.

Argued May 3—decision released June 27, 1989

*Laurence V. Parnoff,* with whom were *Alfred J. Onorato* and, on the brief, *Mary Ann Barile,* for the appellants (plaintiffs).

*Thomas P. Byrne,* for the appellee (named defendant).

*Thomas J. Londregan,* with whom, on the brief, was *Peter M. O'Connor,* for the appellee (defendant Roger L. Phillips).

HULL, J. This case involves the narrow issue of whether the term "land involved" in General Statutes § 8-8 (a),[1] which establishes statutory aggrievement to appeal the decision of a zoning agency to the Superior Court, refers to the overall parcel of land owned by the applicant before that agency or the particular piece of that land that was the subject of the agency decision. We conclude that the "land involved" in such a decision concerns the complete tract of land owned by the applicant rather than the discrete part of it containing the activity considered in the decision of the agency. Accordingly, we find error in the trial court's conclusion to the contrary.

On September 14, 1987, the defendant, Roger L. Phillips, filed an application with the defendant Salem

---

[1] "General Statutes § 8-8. APPEAL FROM BOARD TO COURT. REVIEW BY APPELLATE COURT. (a) Any person or persons severally or jointly aggrieved by any decision of said board, or any person owning land which abuts or is within a radius of one hundred feet of any portion of the land involved in any decision of said board, or any officer, department, board or bureau of any municipality, charged with the enforcement of any order, requirement or decision of said board, may, within fifteen days from the date when notice of such decision was published in a newspaper pursuant to the provisions of section 8-3 or 8-7, as the case may be, take an appeal to the superior court for the judicial district in which such municipality is located, which appeal shall be made returnable to said court in the same manner as that prescribed for civil actions brought to said court."

planning and zoning commission (commission)[2] for a special exception to allow for excavation on Phillips' 110 acre piece of land located on Witch Meadow Road in Salem. On November 17, 1987, the commission approved the application covering a 3.8 acre parcel located deep within the 110 acre parcel. The commission granted an "excavation" permit to excavate down to bedrock. The plaintiffs appealed that decision to the Superior Court claiming that "[t]he Plaintiffs John Caltabiano and Debra Cadwell are owners of property which abuts within 500 feet of the Phillips' parcel and [are] aggrieved by such decision of said Board." Count one alleged certain procedural irregularities in the granting of the application. Count two claimed that the authorized excavation would result in the removal of substances known as pyrites and pyrite ore and cause environmental and health hazards in the areas surrounding the excavation site.

The trial court found that the chemical makeup of the bedrock was the concern of those at the public hearing on the application and of the plaintiffs in the appeal. As a result of this concern the commission did not grant an unrestricted special exception to level the entire 3.8 acre parcel by excavation as requested, but instead conditioned the special exception to the soil above the bedrock.

The court construed the allegations of paragraph two of the complaint as claiming both statutory aggrievement under General Statutes § 8-8 (a) and classical aggrievement. The court found that the property of Caltabiano abutted the 110 acre parcel of Phillips, and that the property of Cadwell was "across the street from the Phillips property." We treat this latter finding, as

---

[2] We follow the designation of the agency used by all of the parties, although we note that in the memorandum of decision the court referred to the more formal title of the "Planning and Zoning Commission of the Town of Salem."

have the parties in this appeal, as an implicit finding that Cadwell's property was "within a radius of one hundred feet" of Phillips' property. The court then stated: "The plaintiff Debra Cadwell did introduce evidence of some activity directly across the street from her property in the nature of a driveway. The plaintiff Cadwell has not established nor does the Court find that such activity is upon the 'land involved in (the) decision of said Board.' The 3.8 acres of land, the location of the permitted excavation, is removed over 1,000 feet from the land of . . . John Caltabiano and [that of] Debra Cadwell. Neither plaintiff is statutorily aggrieved." The court also concluded that neither plaintiff had established classical aggrievement and therefore dismissed the plaintiffs' appeal.

The plaintiffs claim that the court erred in: (1) finding, in contravention of § 8-8 (a), that an abutting landowner is not statutorily aggrieved; (2) failing to find classical aggrievement when the commission's approval contained restrictions that must be violated; (3) amending the record in contravention of both § 8-8 (e) and the rules of evidence; and (4) failing to find that classical aggrievement is established by a landowner upon evidence that action was taken by the zoning authority without necessary, proper and adequate public notice. At oral argument the plaintiffs abandoned any claim of error in the court's failure to find classical aggrievement. Further, in view of our disposition of the case we do not consider the plaintiffs' third claim of error.

We turn now to the question of statutory construction that is dispositive of this case. We repeat the exact wording of § 8-8 (a) that is involved in this case. "[A]ny person owning land which abuts or is within a radius of one hundred feet of any portion of the land involved in any decision of said board" may appeal the decision to the Superior Court. For our analysis we make no

distinction between those who abut or are within 100 feet of the land involved. The interpretation of this requirement is a matter of first impression. Counsel has not cited any case or treatise concerning the matter nor has our research uncovered such authority.

We review the trial court's construction of § 8-8 (a) "in light of well established principles that require us to ascertain and give effect to the apparent intent of the legislature. *Norwich* v. *Silverberg,* 200 Conn. 367, 370–71, 511 A.2d 336 (1986); *State* v. *Kozlowski,* 199 Conn. 667, 673, 509 A.2d 20 (1986); *Hayes* v. *Smith,* 194 Conn. 52, 57, 480 A.2d 425 (1984); *State* v. *Delafose,* 185 Conn. 517, 521, 441 A.2d 158 (1981); 2A Sutherland, Statutory Construction (4th Ed. 1984) § 45.05. When the words of a statute are plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature. *Johnson* v. *Manson,* 196 Conn. 309, 316, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986); *Mazur* v. *Blum,* 184 Conn. 116, 118–19, 441 A.2d 65 (1981). When we are confronted, however, with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself; *State* v. *Kozlowski,* supra, 673; *Dukes* v. *Durante,* 192 Conn. 207, 214, 471 A.2d 1368 (1984); the legislative history and circumstances surrounding the enactment of the statute; *State* v. *Kozlowski,* supra, 673; *DeFonce Construction Corporation* v. *State,* 198 Conn. 185, 187, 501 A.2d 745 (1985); *State* v. *Parmalee,* 197 Conn. 158, 161, 496 A.2d 186 (1985); *State* v. *Delafose,* supra, 522; and the purpose the statute is to serve. *Peck* v. *Jacquemin,* 196 Conn. 53, 64, 491 A.2d 1043 (1985); *Verrastro* v. *Sivertsen,* 188 Conn. 213, 221, 448 A.2d 1344 (1982); *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 8, 434 A.2d 293 (1980)." *Rhodes* v. *Hartford,* 201 Conn. 89, 93, 513 A.2d 124 (1986). We note

also that "[a] statute should not be interpreted in any way to thwart its purpose"; *Evening Sentinel* v. *National Organization for Women,* 168 Conn. 26, 31, 357 A.2d 498 (1975); and that "[i]n construing a statute, common sense must be used and courts will assume that [the legislature intended to accomplish] a reasonable and rational result . . . ." *Norwich Land Co.* v. *Public Utilities Commission,* 170 Conn. 1, 4, 363 A.2d 1386 (1975). We observe, finally, that "[t]his court traditionally eschews construction of statutory language which leads to absurd consequences and bizarre results." *State* v. *Rodgers,* 198 Conn. 53, 61, 502 A.2d 360 (1985), and cases cited therein.

None of the parties to this case presented any analytical reasons either in their briefs or oral argument to sustain their interpretation of the statute. We are thus faced with a clear-cut issue devoid of other authority or strong arguments tending to favor one position or the other. We start our analysis, as always, with the statutory words themselves. The phrase "any portion of the land involved in any decision of said board" may appear on the surface to be very simple to interpret. The core of the issue, however, is an exceptionally slippery concept. The "land involved in any decision" may just as reasonably be construed to mean the larger piece of land, of which the affected piece is a part, or to mean the piece carved out of the larger piece, upon which the requested activity is to occur. This ambiguity in the statute impels us to look at the intent of the legislature by inquiring into the legislative history and circumstances surrounding the enactment of the statute and the purpose the statute is to serve.

The right of an abutter or any person owning land that is within a radius of 100 feet of any portion of the land involved in a decision of the zoning agency to appeal was provided by Public Acts 1967, No. 712, and Public Acts 1977, No. 77-470, respectively. The legis-

lative history of each of these statutory changes sheds no light on our quest. We therefore look to the effect of the changes in and of themselves to indicate legislative intent. Both forms of statutory aggrievement reveal a significant liberalization of the law of aggrievement concerning those who can appeal to court from a decision of a zoning agency. Before the addition of these statutory appellate rights, a person appealing from such a decision had, then as now, an arduous burden to allege and prove so-called classical aggrievement. In order to prove classical aggrievement appellants from a zoning decision "are required to establish . . . that they had a specific, personal and legal interest in the subject matter of the decision as distinguished from a general interest such as is the concern of all members of the community and that they were specially and injuriously affected in their property or other legal rights. *Tucker* v. *Zoning Board of Appeals,* 151 Conn. 510, 514, 199 A.2d 685 [1964]; *Tyler* v. *Board of Zoning Appeals,* 145 Conn. 655, 662, 145 A.2d 832 [1958]." *Krejpcio* v. *Zoning Board of Appeals,* 152 Conn. 657, 660, 211 A.2d 687 (1965). Mere generalizations and fears do not prove that an appellant is an aggrieved person. *Tucker* v. *Zoning Board of Appeals,* supra; *Joyce* v. *Zoning Board of Appeals,* 150 Conn. 696, 698, 187 A.2d 239 (1962). "Upon appeal, [a zoning appellant] must establish his aggrievement, and the court must decide whether he has sustained the burden of proving that fact." *I. R. Stich Associates, Inc.* v. *Town Council,* 155 Conn. 1, 3, 229 A.2d 545 (1967).

It is in light of the formidable barriers to access to the courts for a zoning appeal that we ascertain the legislative intent in granting certain persons statutory aggrievement. We conclude that the legislature presumed as a matter of common knowledge that persons owning property within close proximity to a projected

zoning action would be sufficiently affected by the decision of a zoning agency to be entitled to appeal that decision to court. Giving such a right to the narrow class of abutters and those owning property within 100 feet of the land involved would not unduly enlarge the class of those entitled to appeal such a decision. On the other hand, the delay, difficulty and expense of proving classical aggrievement would be eliminated. This propinquity argument, however, cuts both ways. For unless we construe the statute so as to require propinquity to the actual site of the zoning activity itself, the rationale we have adduced for such statutory aggrievement is obviously lessened. The counterthrust of this aspect of legislative intent is, nonetheless, at least balanced by the fact, as Cadwell's testimony indicates in this case, that it is highly likely that a changed activity within a larger piece will necessarily result in some changes of activity concerning that larger piece that will affect the statutory grievants.

Our decision comes down to a consideration of the bizarre results that would obtain if we were to accept the trial court's decision. Let us consider the owner of a 200 foot residential lot who applied for a zone change on the 100 feet of the lot farther away from an abutting neighbor or from a property owner who claimed to be within 100 feet of the proposed use. To follow the defendants' rationale, neither class of claimed statutory grievant could appeal a decision, where their propinquity to the changed zoning activity would obviously create the presumed effect that we have earlier described. To push the example to the absurd, only a person abutting or within 100 feet of the particular carved-out piece of a larger, but still very close, piece of property would receive the remedial remedy of statutory aggrievement. To apply § 8-8 (a) in such a narrow fashion would be to nullify its effect of opening up the courts to litigants with a presumptively legitimate right

to challenge such zoning decisions. We note that a somewhat equally bizarre result may be considered on the other side of the scale. This would occur, as we construe the statute, if such a statute applied to the King Ranch in Texas where an abutter wished to appeal a zoning decision concerning the construction of a ranch-house twenty miles away. We need not be seriously concerned with this hypothetical suggestion because of the very small nature of our state. It is helpful, however, to focus attention on the wide variety of bizarre results that can be conjured up in interpreting the language of statutory aggrievement.

We resolve the conundrum in this case by stressing the importance in our free society of the right of access to our courts. Only a bright line construction of § 8-8 (a) can avoid the uncertainties of its application to various factual patterns involving proposed zoning decisions affecting only a part of a larger piece of property. We conclude that each of the plaintiffs in this case was statutorily aggrieved—Caltabiano as an abutter, and Cadwell as the owner of land within 100 feet of the land involved—by the decision of the Salem planning and zoning commission. We reach this conclusion being mindful of article first, § 10, of the Connecticut constitution which provides that "[a]ll courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

There is error, the judgment dismissing the plaintiffs' appeal is set aside and the matter is remanded for further proceedings.

In this opinion PETERS , C. J., GLASS and COVELLO, Js., concurred.

SHEA, J., dissenting. The majority purports to find ambiguity in the phrase, "land involved in any deci-

sion," contained in General Statutes § 8-8 (a), and proceeds to resolve that supposed ambiguity by effectively substituting the phrase, "land of the applicant." Thus any person owning land abutting or within 100 feet of the applicant's land becomes statutorily aggrieved, however distant the "land involved in any decision" may be. I disagree with this interpretation of § 8-8 (a) because it virtually rewrites the statute.

I see no reason to expand the category of statutorily aggrieved persons who may appeal a zoning board decision without showing actual aggrievement beyond the limit that a plain reading of the statute would permit. Since a statutorily aggrieved person may appeal, even though he has suffered no detriment from a zoning decision, it is difficult to perceive what public policy the majority is seeking to advance by construing § 8-8 (a) so broadly as to create the King Ranch absurdity made possible by its interpretation, as the opinion acknowledges. The reliance upon article first, § 10, of our state constitution, which declares that "every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law," is wholly misplaced, because a statutorily aggrieved person need not have sustained any injury but, nevertheless, may appeal.

When the legislature opened our courts to this class of litigants, it must have concluded that persons within 100 feet of the land involved in a decision of a zoning board were so likely to be affected by the decision that they should not be required to prove aggrievement by standard methods. The majority, by holding that the prescribed distance is to be measured from the boundary of the entire tract of land within which the "land involved in any decision of said board" is situated, rather than from the portion affected, has gone far beyond the legislative purpose in establishing the concept of statutory aggrievement. Inevitably this enlarge-

ment of the class of persons qualified to appeal without proof of actual aggrievement is bound to result in more zoning appeals by persons who have suffered no actual harm. Scarce judicial resources ought not to be so prodigally expended that they are allocated to those who have not been injured.