[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On July 21, 1989, the defendant Catherine Conte (hereinafter "Conte"), through Environmental Design Associates, P.C. (hereinafter "EDA"), submitted an application for a Coastal Site Plan Review to the defendant Zoning Commission of the City CT Page 6802 of Norwalk (hereinafter commission). (ROR #6). This application sought approval for "Shore Ridge Close," an eight unit conservation development in an AAA zone, within the designated coastal boundary, and containing on-site coastal resources. (ROR #6). The application stated that the subject parcel consists of 12.52 acres, bounded on the north by Raymond Creek and on the south by Half Mile Island. (ROR #6).
On September 25, 1989, Conte, through EDA, submitted an application for a special permit for Shore Ridge Close. (ROR #12). This submission included revised site and engineer plans, aerial photographs, a traffic study, a filing fee and a set of off-site plans. (ROR #12). Pursuant to Conn. Gen. Stat.8-7d(c), the commission officially received the application on either October 18, 1989 or October 30, 1989 (35 days after filing). The record indicates that the commission met on October 18, but it does not indicate whether this was a regularly scheduled meeting. (ROR #15). Pursuant to Conn. Gen. Stat. 22a-109 (d) the commission submitted the coastal site plan to the Connecticut Department of Environmental Protection (hereinafter "DEP") for comments. (ROR #20). Although the letter from the commission to the DEP requesting comments is undated, the plan was received by the DEP on October 23, 1989. (ROR #20). The DEP sent comments on the proposal by letter dated November 15, 1989. (ROR #20).
A public hearing on Conte's proposal was originally scheduled for October 18, 1989, but rescheduled for November 15, 1989, and later withdrawn from consideration on that date at the request of the applicant. (ROR #14, 15, 16, 19). By letter dated November 29, 1989, the commission requested a 65 day extension of the time in which a public hearing must be held because "no revised plans have been received by [the commission] making the plan conform to the Zoning Requirements." (ROR #21). By letter dated December 12, 1989, Conte, through EDA, requested a grant of a full extension on the application because of unresolved tidal wetland issues. (ROR #22).
After being continued from the regular meetings of the commission held on February 21, 1990 and March 21, 1990 (ROR #s 25, 26, 27, 29, 34), the hearing on Conte's application was held on April 18, 1990. (ROR #40, 57). At the hearing comments were received from EDA, Conte's attorney, McNally's attorney, and a citizens' group, (ROR #40), and the hearing was then closed. (ROR #40).
The Plan Review Committee of the commission met on April 26, 1990 and voted to table Conte's proposal until the DEP provided the commission with certain information. (ROR #41). Conte, through her attorney, requested an extension beyond June CT Page 6803 20, 1990 for the commission to vote on her application. (ROR #s 43, 44). After its regular meeting on August 9, 1990 (ROR #51), the Plan Review Committee recommended to the commission that Conte's application be approved subject to seven conditions. (ROR #52). This recommendation was adopted by the commission at its August 15, 1990 meeting. (ROR #s 53, 58). The commission's resolution stated that the application was approved because it complies with sections 118-410, 118-1450 and 118-1110 of the zoning regulations and applicable coastal resource and use policies. (ROR #53).
Notice of the decision was published in the Norwalk Hour on August 23, 1990. (ROR #55). On August 31, 1990, McNally served this appeal on the defendants. (See Sheriff's Return). A hearing on the appeal was held before this court on April 9, 1991 and April 23, 1991.
When the commission acted on Conte's application, it acted pursuant to Conn. Gen. Stat. 22a-105, 22a-109, and The Building Zone Regulations of the City of Norwalk.
The application for a special permit and coastal site plan involved the development of "Shore Ridge Close", a residential development on Canfield Avenue in Norwalk. (ROR #6). According to the applicant,
 [t]he development shall be residential conservation development in a AAA zone. The parcel lies within the designated coastal boundary with the on-site coastal resources identified by the Coastal Resource Map, South Norwalk Quadrangle, 1979 as Shorelands, Coastal `Floor' Hazard Area, and Regulated Tidal Wetlands.
(ROR #6). The plan contemplated building eight single-family homes, a boat house, swimming pool, and associated facilities on a parcel consisting of 12.52 acres. (ROR #6). The building zone map indicates that this parcel lies on a piece of property bordering Long Island Sound. (ROR #60).
The proposal, because it involves development within the state-designated coastal boundary; see Conn. Gen. Stat. 22a-94; provoked opposition from the State Department of Environmental Protection and this appellant. (See, e.g., ROR #20). Among the concerns of the DEP were the determination of lot area, the impact of the proposal on coastal resources, water-dependent uses, the history of tidal wetlands violations at the site, and the location in the site plan of the wetlands boundary. (ROR #20). In response to the DEP comments the site plan was revised. (ROR #30). The record indicates that at the time the application was approved by the commission, issues of CT Page 6804 concern to the DEP remained unresolved. (ROR #s 37 49).
Section 8-8(b) of the General Statutes authorizes any person aggrieved by the decision of a zoning commission to take an appeal to the superior court. See also Primerica v. Planning and Zoning Commission, 211 Conn. 85, 92 (1989). Aggrievement is a question of fact for the trial court to determine on appeal. Id. at 93. A party who owns land that abuts or is within a radius of one hundred feet of any portion of the land involved in the commission's decision is statutorily aggrieved. Conn. Gen. Stat. 8-8 (a)(1).
In the present case, plaintiff claims she has standing to appeal as the owner of property within one hundred feet of the land involved in the commission's decision, and as a person who intervened in the administrative proceedings before the commission pursuant to Conn. Gen. Stat. 22a-19.
Plaintiff's aggrievement under 8-8 presents a thorny question for the court because for the purpose of finding aggrievement, plaintiff contends that the correct measurement is from her mean high water mark to the center of the creek, I defendant Conte's record property line; on the merits, however, plaintiff contends that defendant does not actually own the land to the center of the creek. McNally argues that the "land involved in the decision" included the land below the mean high water mark, that she is within one hundred feet of this land, and is, therefore, statutorily aggrieved. The defendants contend that plaintiff cannot use one boundary for the purpose of aggrievement and another to support her position on the merits. They argue that the evidence shows the distance between Conte's and McNally's mean high water marks to be one hundred forty-two feet, and therefore McNally is not statutorily aggrieved. See Defendants' Exhibit 1. Conte argues that if McNally maintains her position that Conte neither owns the entire tract in fee simple nor has any legal interest in the portion of the tract below the mean high water mark then McNally cannot calculate the distance, for purposes of 8-8, using as a boundary land she claims Conte does not own. McNally argues that regardless of whether Conte owns the land below the mean high water mark, that land was involved in the commission's decision.
The parties each cite Caltabiano v. Planning Zoning Commission, 211 Conn. 662 (1989) in support of their position While Caltabiano provides some guidance on the issue before the court, its holding is not dispositive in this case because of a distinguishable fact pattern. In Caltabiano the commission's decision concerned a 3.8 acre parcel "located deep within" a 110 acre parcel owned by the applicant. Caltabiano, 211 Conn. at CT Page 6805 664. The plaintiffs lived across the street from the 110 acre parcel and appealed the commission's decision, claiming statutory aggrievement as owners of property within 100 feet of the 110 acre parcel. Id. The trial court dismissed the appeal, concluding that plaintiffs were not within 100 feet of the 3.8 acre tract, which was the land involved in the decision of the board, and were therefore not aggrieved. Id. at 665. The plaintiffs appealed, and the Supreme Court set aside the dismissal. Id. at 670.
The Supreme Court found the language "land involved in any decision" in 8-8 to be ambiguous, and therefore looked to the legislative history of the statute to determine the legislature's intent. Id. at 667. Finding no guidance there, the court looked to the effect of the statutory change which authorized abutters or persons owning land within a 100 foot radius to appeal. Id. at 668. The court stated:
 It is in light of the formidable barriers to access to the courts for a zoning appeal that we ascertain the legislative intent in granting certain persons statutory aggrievement. We conclude that the legislature presumed as a matter of common knowledge that persons owning property within close proximity to a projected zoning action would be sufficiently affected by the decision of a zoning agency to be entitled to appeal that decision to court. Giving such a right to the narrow class of abutters and those owning property within 100 feet of the land involved would not unduly enlarge the class of those entitled to appeal such a decision. On the other hand, the delay, difficulty and expense of proving classical aggrievement would be eliminated.
Caltabiano, 211 Conn. at 668-69. In holding that the "land involved" in the agency's decision "concerns the complete tract of land owned by the applicant rather than the discrete part of it containing the activity considered in the decision of the agency," Caltabiano, 211 Conn. at 663, the court considered the bizarre results that would obtain if an appellant were required to be within 100 feet of a discrete piece of a larger parcel. Id. at 669. "To apply 8-8(a) in such a narrow fashion would be to nullify its effect of opening up the courts to litigants with a presumptively legitimate right to challenge such zoning decisions." Id. at 669-70.
In the case at bar defendant Conte claims ownership to a parcel consisting of 12.52 acres, including land below the mean high water mark. (ROR #6). The defendant zoning commission considered a special permit application for a conservation CT Page 6806 development using calculations based on the claimed 12.52 acre parcel. McNally claims in her appeal that Conte does not own 12.52 acres, and that the commission's decision based on such a figure is erroneous. Unlike Caltabiano, where the piece of land affected by the commission's decision constituted only a small portion of the applicant's entire property, this case involves the inverse situation. Here, the commission's decision involved a parcel alleged to be larger than that owned by the applicant. Although the court in Caltabiano held that the phrase "land involved in the decision" means the "complete tract of land owned by the applicant," such holding is inapplicable to the factual scenario in this case. Under the facts of this case, the phrase "land involved in the decision" should be read to mean the land claimed to be owned by the applicant, accepted by the commission as owned by the applicant, and on which the commission based the substance of its decision. In this case, that land is the 12.52 acre parcel Conte claims to own. The evidence shows that McNally's property is within one hundred feet of such land, see Plaintiff's Exhibit C, and McNally is, therefore, statutorily aggrieved.
Conn. Gen. Stat. 22a-19 authorizes any person to intervene in any administrative proceeding and in any judicial review thereof in order to raise environmental issues within the jurisdiction of the administrative body involved. Connecticut Fund for the Environment v. Stamford, 192 Conn. 247, 250 (1984). "By permitting such intervention, the [Environmental Protection Act] confers standing to private persons to bring actions to protect the environment." Connecticut Water Co. v. Beausoleil,204 Conn. 38, 45 (1987).
A person who intervenes pursuant to 22a-19 has statutory standing to appeal the commission's decision, Red Hill Coalition, Inc. v. Conservation Commission, 212 Conn. 710, 715
(1989), and need not be "classically" aggrieved. Mystic Marinelife Aquarium v. Gill, 175 Conn. 483 (1978).
Record Item #31 is McNally's Notice of intervention filed with the Norwalk Zoning Commission on March 26, 1990. In her intervention petition McNally alleged that Conte's application, if approved, would unreasonably pollute, impair and destroy the public trust in the waters and other natural resources of the state. McNally properly intervened in the proceedings before the commission. Because of this, she has statutory standing to appeal the commission's decision. Thus, "22a-19 creates statutory aggrievement." Doyle v. Carothers, 3 Conn. L. Rptr. No. 18, 603, 605 (April 5, 1991, Arena, J.). This, however, in and of itself is not enough to authorize the appeal unless a statute exists which creates such right of appeal. Id. (citing Tarnopol v. Connecticut Siting Council, 212 Conn. 157, 163-64
CT Page 6807 (1989)). Conn. Gen. Stat. 8-8 creates the right to appeal the decision of a zoning commission. Because McNally is statutorily aggrieved under section 22a-19, and the right to appeal exists by virtue of 8-8, McNally is authorized to bring this appeal for the limited purpose of raising environmental issues.
Section 8-8 (b) provides that an appeal from the decision of a zoning commission shall be commenced by service of the appeal on the defendant commission within fifteen days from the date that notice of the commission's decision was published. The decision of the Norwalk zoning commission approving the special permit application of defendant Conte was published in the Norwalk Hour newspaper on August 23, 1990. (ROR #55). Plaintiff served the Citation, Appeal and Recognizance on the chairman of the defendant commission, the town clerk of the City of Norwalk, and defendant Conte on August 31, 1990. (See Sheriff's Return of Service). The appeal is timely.
In ruling on an application for a special permit, the zoning commission acts in its administrative capacity. Double I Limited Partnership v. Plan Zoning Commission, 218 Conn. 65,72 (1991); A.P.W. Holding Corp. v. Planning Zoning Board,167 Conn. 182, 184-85 (1974). "A special permit allows a property owner to use his property in a manner expressly permitted by the local zoning regulations." A.P.W. Holding Corp., 167 Conn. at 185. Such use must meet the standards set forth in the regulations, "as well as the `conditions necessary to protect the public health, safety, convenience and property values.' General Statutes "8.2." Id. In its administrative capacity, the commission's job is to determine whether the proposed use is expressly permitted by the regulations, and whether the standards of the General Statutes and of the regulations are satisfied. Id.
The zoning commission is also charged with deciding whether and how a particular section of the regulations applies to a particular situation. Double I Limited Partnership v. Plan Zoning Commission, 218 Conn. at 72. It is for the trial court to decide whether the commission correctly interpreted the regulation at issue and applied it with reasonable discretion to the facts. Id. Because the commission has broad discretion when acting in its administrative capacity, the court's function is only to determine whether the commission's decision was arbitrary, illegal or an abuse of discretion. Id. A commission's action may be considered arbitrary and illegal if the commission construed the regulation "beyond the fair import of its language." Id. "The rules of statutory construction apply to the interpretation of local regulations." Id. at 73. On appeal, the plaintiff has the burden of proving that the commission acted improperly. Blaker v. Planning and Zoning CT Page 6808 Commission, 212 Conn. 471, 478 (1989).
Conte proposed, and the commission accepted, a density of development calculation under section 118-410 of the zoning regulations[1] based on a parcel consisting of 12.52 acres. McNally challenges this calculation, asserting first that Conte does not own the portion of the parcel which lies below the mean high water mark and second, that the parcel does not "contain a body of water," therefore the application of 118-410 to land below the mean high water mark was error.
On the first point, McNally argues that the settled law is the ownership of the soils below the mean high water mark is in the state, and therefore, such land is unavailable to Conte for inclusion in her zoning application. She further argues that such land is beyond the jurisdiction of the commission, so their inclusion of such land in their consideration of Conte's application was erroneous. Plaintiff relies on several Connecticut and United States Supreme Court cases, and the opinion of the DEP (ROR #2, 20) in support of her position. On the second point plaintiff argues that the Conte property does not "contain a body of water," it borders Long Island Sound. Therefore, 118-410C(3) of the zoning regulations cannot be read to include areas of long Island Sound below mean high water.
Conte argues that plaintiff has not presented any expert evidence concerning the status of title to the land below the mean high water mark. She states that she submitted surveys as well as a deed description which delineate the property as consisting of 12.52 acres. "Thus, the record contains evidence indicating the Defendant as owner of the property below the high-water mark and the Commission was correct in following its own judgment based upon expert evidence in the record." (Defendant's Pre-Trial Brief at p. 6). Conte contends that the issue is not ownership, but whether the commission correctly applied the conservation development regulation to the application. She further argues that regardless of whether she owns the property below the mean high water mark in fee simple, she has rights in that property, including the "right to employ the property below the high-water mark subject to zoning and statutory regulation." (Defendant's Pre-Trial Brief at p. 9). Conte cites numerous cases discussing the rights of riparian land owners. Further, Conte posits that "[t]he important distinction is that the Commission was not regulating these soils but simply allowing applicants, pursuant to the Conservation Development Regulation, to take these soils into account when calculating the number of dwellings to be build on the upland." (Defendant's Pre-Trial Brief at p. 11). CT Page 6809
Finally, Conte argues that even if she has no interest in the soils below the mean high water mark, the Conservation Development Regulation allows the commission to include such soils in the density calculation as an incentive to promote reasonable development in and around valuable natural resources. The record shows that the question of how much land Conte owns and what land should be factored into the density calculation was a source of much debate. (See Ror #s 1, 2, 3, 4, 5, 7, 8, 17, 20, 39, 40, 41, 52 and 57). In August of 1988, a year prior to the submission of the application, Conte's attorneys opined in response to a request from James A. Conte that "Your property would extend to the center line of the adjacent watercourse, assuming that the water is in fact non-navigable." (ROR #1). This opinion was based on cases that "implicitly recognize that the land under non-navigable water may be owned by private individuals." (ROR #1). Among the cases cited are Chapman v. Kimball, 9 Conn. 38 (1831), East Haven v. Hemingway, 7 Conn. 186 (1928), and State v. Knowled-Lombard Co.,122 Conn. 263 (1936). Conte's property deed, attached to her attorney's letter, describes her property as extending to the center line of Raymond's Creek. (ROR #1). In a letter to the commission also dated August, 1988, the DEP stated "it is our belief that the land area constituting the Conte's property must be calculated as the land above mean high water." (ROR #2). his opinion was based on an interpretation of a "littoral owner's property as extending only to mean high water (MHW), barring a King's grant or some other dedication of tidelands to the contrary prior to the establishment of Connecticut as a state," and the U.S. Supreme Court case of Phillips Petroleum Co. v. Mississippi, 108 S.Ct. 791 (1988). (ROR #2).
On September 27, 1988, the commission requested of the Norwalk Law Department an opinion regarding what Conte could claim as area for calculating housing densities. (ROR #3). By letter dated January 20, 1989 Sara L. Oley, Assistant Corporation Counsel, responded:
 Regardless or whether the State or Mrs. Conte has legal title to the tidal property below the mean high water mark, and there appears to be a good possibility that her title can be traced to a grant from the Selectmen of the Settlement of Norwalk prior to statehood, it is the opinion of this department that pursuant to the applicable zoning regulations, the land area used for calculation of housing density should include the entire parcel. The land below the mean high water mark to the boundaries set forth in the deed should not be excluded. CT Page 6810
(ROR #4). In rendering this opinion she relied on the language of the Conservation Development Regulation, 118-410, which, she stated, contemplates property containing tidal land. (ROR #4). specifically, Oley stated:
 The regulations refer to "parcels which contain a body of water, a designated inland wetland or watercourse," The term "parcel" is defined in Blacks Law Dictionary as "a description of property, formally set forth in a conveyance, together with the boundaries thereof, in order to its easy identification." It is also indicated that parcel may be synonymous with lot. Parcel does not require absolute ownership, rather, it refers to a particular defined description of land. The parcel in this application has always included land which is of questionable legal ownership. However, the boundaries of the parcel have never been in question, and thus, it would seem that the regulation applies to the entire parcel, not a part.
(ROR #4). Although acknowledging the Phillips Petroleum case as standing for the proposition that all tidal land below mean high water is owned by the State, Oley advised that commission that the regulation at issue entitled Conte to include the submerged land in her application regardless of ownership. (ROR #4). Oley also stated "The property in question . . .is a parcel of land described in an unbroken chain of title at least as far back as 1771, and is bounded by the center line of Raymond's Creek. (See attached letter of Titles Unlimited, dated Jan. 9, 1989)" (ROR #4). The referenced letter is not part of the record, however, and it is therefore found that the record does not actually contain any evidence that Conte's title can, in fact, be traced back to a pre-statehood grant from the selectmen of the settlement of Norwalk.
After the coastal site plan had been filed with the commission, the commission notified EDA that DEP approval was required for use of wetlands for unit density calculation. (ROR #7). EDA responded that DEP approval was not applicable, and that "the density calculation is spelled out in a letter dated 1/20/89 from Sara Oley . . . We are following these calculations." (ROR #8). In its comments on the plan, the DEP stated, in reference to the determination of the lot area:
Fifty percent of the wetland and water area acreage claimed to be owned by the applicant has been included to qualify for the minimum lot size requirement and to calculate the number of detached residential dwelling units allowed. As you may know, questions regarding the legality of this practice have been raised in CT Page 6811 a letter from former CRMD staff member Chris Recchia to Michael Wrinn on August 29, 1988 (copy attached). As stated in this letter, the DEP has consistently interpreted a littoral owner's property as extending only to mean high water (MHW), barring a King's grant or other evidence of undisputed ownership of tidelands.
The City's Corporation Council has apparently issued an opinion that the inclusion of wetland and water areas into minimum lot size requirements is consistent with the City's zoning regulations. However, from a coastal resource management perspective, we believe the practice of allowing undevelopable wetland and water resource acreage to be factored into the determination of upland development potential is problematic. The intent of resource-based zoning, as you are well aware, is to match allowed uses and intensity of such uses to the inherent capability of the land to support them. Allowing sensitive resources to qualify in the determination of lot area can, in some cases, result in direct or indirect impacts to those same resources. Based upon this analysis and in the absence of evidence which demonstrates clear title to this site, we recommend that the land area constituting the Conte's property be calculated as the land above mean high water. This approach is further supported by the fact that Norwalk's jurisdiction ends at the mean high water mark.
The DEP further stated:
 The practice of including tidal wetlands and waters in density calculations allows for a significantly higher number of dwelling units . . .on limited upland acreage within a flood hazard area. This increased density does not represent an effective minimization of hazards to life and property
(ROR #2). This opinion referenced the relevant coastal flood hazard policy of the Connecticut Coastal Management Act, Conn. Gen. Stat. 22a-92 (b)(2)(F), as "manag[ing] coastal hazard areas so as to insure that development proceeds in such a manner that hazards to life and property are minimized . . . ." (ROR #20 Conn. Gen. Stat. 22a-92 (b)(2)(F)). The DEP Comments concluded by stating that "[t]idal wetlands and public waters should not be allowed to qualify for development potential in the absence of conclusive evidence of ownership by the applicant." (ROR #20).
The Plan Review Committee noted the conflict between the DEP and Norwalk Corporation Counsel over the allowable acreage CT Page 6812 for density calculation purposes in a memorandum to the commission dated April 18, 1990, and the issue was raised at the public hearing. (ROR #39, 40). On April 26, 1990 the Plan Review Committee met again on this issue. (ROR #41). It was decided to table the application until information was received from the state. (ROR #41). At is meeting on July 26, 1990, the Plan Review Committee noted that the application had to be voted on at the next meeting of the full zoning commission, and no response had been received from the state. (ROR #47). By letter dated July 31, 1990 the commission requested a response from the DEP so that it could evaluate the approvability of the proposal. (ROR #48). In response, the DEP notified the commission that it would not be able to resolve the matter conclusively prior to the commission's meeting because of the longstanding and complicated nature of the on-site wetland violations. (ROR #49).
When the Plan Review Committee met again on August 9, 1990 to conduct a final review of the application, the DEP letter was referenced, but the minutes do not reflect that the density calculation was specifically discussed. (ROR #51). At its meeting on August 15, 1990, the commission approved the eight-unit conservation development (ROR #53), and therefore it can be inferred that the decision was based on the opinion regarding density provided by the corporation counsel.
That the state has title to land below the mean high water mark is evidenced by over 150 years of case law in Connecticut. See, e.g., Chapman v. Kimball, 9 Conn. 38, 40-41 (1831); Orange v. Resnick, 94 Conn. 573 (1920) Bloom v. Water Resources Commission, 157 Conn. 528 (1969); Mihalczo v. Woodmont,175 Conn. 535 (1978); Matto v. Dan Beard, Inc., 15 Conn. App. 458
(1988), cert. den. 209 Conn. 812 (1988). In much of the early case law, the determinative factor was whether the watercourse was navigable. This principle, known as the "public trust doctrine," is based on the common law that "1 . . .the title and dominion in lands flowed by the tide water were in the King for the benefit of the nation . . . . Upon the American Revolution, these rights, charged with a like trust, were rested in the original States within their respective borders, subject to the rights surrendered by the Constitution of the United States.'" Shively v. Bowlby, 152 U.S. 1, 57 (1894), quoted in Phillips Petroleum Co. v. Mississippi, 108 S.CT. 791, 794 (1988). In Petroleum Co. the Supreme Court noted that the doctrine was not limited to navigable waters, but extended as well to subject to the ebb and flow of the tide, regardless of navigability. Id. at 795. In order for title to such submerged lands to be in the upland owner, a pre-statehood grant of the submerged land to the upland owner claiming ownership of the submerged lands must be established. See Shively v. Bowlby, CT Page 6813152 U.S. 1, 24 (1894).
In this case, the record does not contain any evidence that Conte's title can be traced back to a pre-statehood grant from the sovereign at the time. Although Corporation Counsel stated that possibility exists that Conte's title can be traced back to 1771 (Connecticut became a state in January of 1788), no evidence of this possibility is contained in the record. Therefore, it is found that Conte did not establish her ownership of the submerged lands before the commission, to show title to the 12.52 acres on which her application is based.
Such a conclusion does not necessarily resolve the issue. The commission applied the conservation development regulation, 118-410C(3)(a), to the application, presumably finding, based on corporation counsel's opinion, that regardless of ownership of the submerged land, the regulation contemplated parcels containing such land. This issue raises two questions: first, is the right to include land one does not own in a zoning application among an upland owner's riparian rights, and second, does Conte's parcel "contain a body of water."
As the owner of the upland portion of the property, Conte has certain riparian rights. State v. Knowles-Lombard Co.,122 Conn. 263, 266 (1936). While the ownership of the upland extends only to the high water mark, "the owner of upland has certain rights to use the land between high and low water mark and the waters extending therefrom to the point where they become navigable." Port Clinton Associates v. Board of Selectmen, 217 Conn. 588, 597 (1991).
 Although riparian rights are in fact `property', (citations omitted); rather than simply `rights' that constitute elements of ownership; (citations omitted); they are so limited by superior public rights that they are often refereed to as a mere `franchise.' (citation omitted). thus, `[a] riparian proprietor whose land is bounded by a navigable stream has certain rights, as such, among which . . . are `access to the navigable part of the river from the front of his lot, the right to make a landing, way or pier for his own use or for the use of the public, subject to such general rules and regulations as the legislature may see proper to impose for the protection of the rights of the public, whatever those rights may be.' (citations omitted).
Id. at 597-98. Conte has not provided, and an exhaustive review of the cases has not found, any support for the proposition that the rights of a riparian owner include the right to CT Page 6814 exercise dominion over land below mean high water. The inclusion of such land in her zoning application was an attempt to exercise such right, and as previously stated, that right belongs to the state.
By applying the conservation development regulation to Conte's property, it can be inferred that the commission deemed the property to "contain a body of water." This was error. The record shows that Conte's property borders on Long Island Sound. (See Norwalk Building Zone Map, ROR #60). While Long Island Sound itself may be a "body of water," the portion of the Sound contained in Conte's parcel is not itself a "body of water." The General Statutes do not contemplate local zoning of land waterward of the mean high water mark. See, e.g., Conn. Gen. Stat. 22a-101 (" . . .coastal municipalities may adopt a municipal coastal program for the area within the coastal boundary and landward of the mean high water mark."); 22a-105
(Coastal site plans are considered activities or projects within the coastal boundary and landward of the mean high water mark) Therefore, the commission misapplied section 118-410C(3)(a) to Conte's application by applying it to the portion of the parcel below the mean high water mark. Based on the foregoing, the commission erred in calculating the density of development.
The record reflects that the Shore Ridge Close Coastal Site Plan, dated July 21, 1989, was filed with the commission on July 21, 1989 (ROR #6). The commission responded to this submission by informing EDA that in order to complete the application certain steps would have to be taken by the applicant, including submission of a special permit application. (ROR #7). A preliminary review of the site plan was conducted by the plan review committee on August 10, 1989. (ROR #9). On September 26, 1989, Conte, through EDA, filed her special permit application with the commission. (ROR #12).
At the time both the coastal site plan review and the special permit applications were filed with the commission, the Norwalk zoning regulations governing conservation developments provided in pertinent part that:
 (3) The maximum number of dwellings permitted in a conservation development shall be determined by dividing the total acreage of the parcel by the minimum lot size permitted in the zone and multiplying the result by ninety hundredths (.90). A fraction of one-half (1/2) or more shall be rounded off to the next higher whole number.
 (a) parcels which contain a body of water, a designated inland wetland or watercourse CT Page 6815 tidal wetland shall include only fifty percent (50%) of said body of water or designated wetland area in arriving at the maximum number of dwelling units permitted above, and . . . .
Building Zone Regulations of the City of Norwalk, Sections 118-410C(3) and 118-410C(3)(a) (Amended to May 26, 1989) (ROR #59). This is the regulation the commission applied to Conte's application, and the regulation with which the proposal was to conform. On February 21, 1990, prior to the dates of the public hearing and the commission's decision on Conte's application, the commission approved an amendment to the above regulation, effective March 2, 1990. (ROR #59).
The amended regulation provides, in pertinent part, that:
 c. (3) "The maximum number of dwellings permitted in a conservation development shall be determined by dividing the total acreage of the parcel by the minimum lot size permitted in the zone and multiplying the result by eighty-five hundredths (.85). A fraction of one-half (1/2) or more shall be rounded off to the next higher whole number."
 (a) "Parcels which contain a body of water, a designated inland wetland or watercourse or tidal wetland shall include only thirty three and one third percent (33 1/3%) of said body of water or designated wetland area in arriving at the maximum number of dwelling units permitted above; and. . ."
Building Zone Regulations of the City of Norwalk, Sections 119-410C(3) and 118-410C(3)(a) (Amended to March 2, 1990). (ROR #59).
McNally submits that the commission erred by applying the regulation in effect at the time Conte filed her application, rather than the amended regulation, which was in effect at the time of the commission's decision. Because the new regulation provides for the inclusion of a smaller portion of the wetlands in the density calculation, the eight units proposed by Conte could not have been approved. In support of her position McNally relies on McCallum v. Inland Wetlands Commission,196 Conn. 218 (1985), where the court stated:
 The majority rule, and the rule followed in Connecticut, is that the zoning law or regulation in effect at the time of the decision of a court is controlling as CT Page 6816 opposed to that in effect when the proceedings were instituted or when the administrative agency entered its decision upon the application.
Conte argues in opposition that the commission's consideration of the application under the old regulation was proper because of Conn. Public Act 89-311 section 2(a). This section provides:
 An application filed with a zoning commission . . .which is in conformance with the applicable zoning regulations as of the time of filing shall not be required to comply with, nor shall it be disapproved for the reason that it does not comply with, any change in the zoning regulations . . . taking effect after the filing of such application.
Contrary to Conte's assertion, the commission was not under a statutory obligation to apply the regulations in effect at the time of the application for the reason that Public Act 89-311 does not apply to Conte's application, which was filed prior to the Act's effective date, October 1, 1989.
 ". . . Public Acts 1989, No. 89-311, was a new enactment rather than an act that was passed to clarify an existing statute. While it may well have been enacted to change a rule engrained in nearly five years case law, "[s]uch a change in the law must presumptively be applied prospectively." Darak v. Darak, 210 Conn. 462, 473, 556 A.2d 145 (1989).
A.D.A.M. Land Development Corporation v. Conservation Commission, 21 Conn. App. 122, 130 (1990). Therefore, under the rule articulated in McCallum, the amended versions of regulations 118-410C(3) and 118-410C(3)(a) should have been applied to Conte's application, and the commission's failure to do so constitutes error. The application did not conform to the the applicable regulations regarding density of development, and the commission .should, therefore, have denied it.
McNally alleges in her appeal petition that the commission failed to comply with the provisions of the Connecticut Coastal Management Act, Conn. Gen. Stat. 22a-109, by failing to refer the application to the Commissioner of Environmental Protection within fifteen days of its receipt, by failing to consider the comments and recommendations of the Commissioner of Environmental Protection; and by approving the application despite comments from the DEP that the application violated state policies and standards. She also alleges that the commission disregarded the Norwalk Code enforcement Administration Committee's findings regarding the site. CT Page 6817
Conn. Gen. Stat. 22a-109 (d) provides that a "copy of each coastal site plan submitted for any shoreline flood; and erosion control structure shall be referred to the Commissioner of Environmental Protection within fifteen days of its receipt by the zoning commission." The statute contains no penalty for failure to comply with the time requirement. In this case, the coastal site plan was filed with the commission on July 25, 1989. (ROR #6). The special permit application required by section 118-410B of the Norwalk Building Zone Regulations (ROR #59) was filed on September 25, 1989, and "received" on either October 18, 1989 or October 30, 1989. (ROR #15). See Conn. Gen. Stat. 8-7d(c). The plan was received by DEP on October 23, 1989. (ROR #20). Regardless of whether the commission submitted the coastal site plan to DEP within fifteen days of its receipt, the hearing on the application was not held until April, 1990, and the DEP's comments on the application were received well before that time. (ROR #s 20, 37, 38). Plaintiff's appeal cannot be sustained on this ground.
McNally next argues that the approval of Conte's application is arbitrary, capricious and contrary to law because the commission disregarded unresolved issues of illegal fill placed in the tidal wetlands on Conte's property and the proposed unreasonable intrusion into the tidal wetlands in violation of Conn. Gen. Stat. 22a-92 (b)(D). She further argues that the commission's decision ignores the recommendations of the state DEP and the Norwalk Code Enforcement Committee that the application be denied and that violations on site must be resolved. Conte argues that the commission "listened to the DEP as required by statute and conditioned the permit on subsequent approval by DEP", but was "not required to blindly follow the DEP comments but rather those comments are only a factor in the decision making process." (Defendant's Pre-Trial Brief).
Conn. Gen. Stat. 22a-109(d) provides:
 (d) A copy of each coastal site plan submitted for any shoreline flood and erosion control structure shall be referred to the commissioner of environmental protection within fifteen days of its receipt by the zoning commission. The day of receipt shall be determined in accordance with subsection (c) of section 8-7d. The commissioner may comment on and make recommendations on such plans. Such comments and recommendations shall be submitted to the zoning commission within thirty-five days of the date of receipt of the coastal site plan by the commissioner and shall be considered by the zoning commission before final action on the plan. If the commissioner fails to comment on a plan within CT Page 6818 the thirty-five-day period or any extension granted by the zoning commission, the zoning commission may take final action on such plan. Failure to comment by the commissioner shall not be construed to be approval or disapproval.
In this case the DEP commented on the Conte application, and although the comments are too lengthy to be included here, the overall tone of them was negative. ("[T]he subject property has a lengthy and unresolved violation history." (ROR #20); "[w]e strongly believe that it is not possible for the commission to accurately evaluate the potential adverse impacts to tidal wetlands which would result from the proposed development project." (ROR #37); "[t]he applicant elected to seek your approval of a project knowing full well that the matter of tidal wetlands violations was unresolved . . . .We have recommended that this project be withdrawn by the applicant or denied without prejudice . . . ." (ROR #49)).
The record reflects the fact that the commission considered the DEP's comments, and, in fact, conditioned the approval on DEP and Army Corps of Engineers approvals being obtained. (ROR #s 23, 30, 33, 39, 40, 41, 47, 48, 51, 52, 53, 57). Section 22a-109 (d) of the General Statutes requires that the commission consider the comments and recommendations of the DEP, not that those comments and recommendations be adhered to. In this case, the commission followed the dictates of the statute, and any failure to follow the DEP's recommendations cannot be considered error.
Regarding McNally's contention that the application violated state policies and standards, the commission's decision contains a finding that the proposal complies with applicable coastal resource and use policies. (ROR #53). Such factual finding was within the agency's determination, Feinson v. Conservation Commission, 180 Conn. 421, 425 (1980), and it cannot be discredited because it conflicts with comments from the DEP, which indicate that a complete evaluation of the project had not been made. (ROR #37). Further, the Code Enforcement Officer's report dated September 11, 1989 states steps which the applicant should take regarding the site and the application, and the record indicates that the proposal was revised subsequent to that date. (ROR #30). The plaintiff has not shown that the revised plans were disapproved by the CEO. Because the commission acted prior to an evaluation of the revised plan by the DEP, the record does not contain evidence that contradicts the commission's finding of consistency with the coastal management act. Because the approval was conditioned on the applicant obtaining DEP permits and correcting on-site violations, plaintiff has not shown that the CT Page 6819 commission disregarded those issues in violation of the policies of Conn. Gen. Stat. 22a-92(b)(D). ("Policies concerning development, facilities and uses within the coastal boundary are . . .to require that structures in tidal wetlands and coastal waters be designed, constructed and maintained to minimize adverse impacts on coastal resources . . . .").
The commission's decision approved Conte's application subject to several conditions, among which was the requirement "[t]hat all required approvals from the DEP and Army Corps are obtained for all required site improvements." (ROR #s 53 and 54). McNally contends that this conditional approval was improper because "there is no reason to presume that the DE P will approve the proposed regulated activities in designated tidal wetlands." (Plaintiff's Trial Brief at VI). Plaintiff further argues "there is every reason to anticipate that the DEP will deny the regulated activities which are integral to the subject application." (Plaintiff's Trial Brief at VI), Plaintiff relies on Lurie v. Planning and Zoning Commission,160 Conn. 295 (1971) for the proposition that conditional approval will be valid if it is made reasonably conditional on favorable action by another agency over which the commission has no control. Because favorable action by other agencies is unlikely, plaintiff argues that the commission should have denied Conte's application.
Conte argues that Lurie and its progeny hold that a condition on an approval is valid regardless of the probability or likelihood of approval from the other agency. (Defendant Conte's Pre-Trial Brief at 25). Conte further argues that the "probability of the Defendant obtaining a permit from the DEP is high as the Defendant has clearly stated on the record that any existing violations would be corrected." (Defendant Conte's Pre-Trial Brief at 25).
Record items 20, 38, 42, 49 and 50 are copies of correspondence from the Connecticut Department of Environmental Protection to the commission and James F. Conte regarding Conte's application. The letters indicate that unless and until all on-site violations are corrected, no DEP permits will be forthcoming. In letters dated April 18, 1990 (ROR #38), and August 6, 1990 (ROR #49) the DEP recommended to the commission that the application be denied because of longstanding unresolved violations by the applicant, despite the applicant's recent efforts to resolve the problems.
As a general rule, approval of a zoning application conditioned on positive action by another agency is invalid. Stiles v. Town Council, 159 Conn. 212, 221 (1970). An exception to this rule exists in the case of a special permit or CT Page 6820 exception. Lurie v. Planning Zoning Commission, 160 Conn. 295,307 (1971) Carpenter v. Planning Zoning Commission,176 Conn. 581, 595 (1979).
 [W]here an exception or special permit is granted and the grant is otherwise valid except that it is made reasonably conditional on favorable action by another agency or agencies over which the zoning authority has no control, its issuance will not be held invalid solely because of the existence of any such condition.
Lurie, 160 Conn. at 307. The purpose of this exception to the general rule is to achieve greater flexibility by avoiding stalemates among municipal agencies required to act on a given application. Blaker v. Planning Zoning Commission, 212 Conn. 471,482 (1989). Such purpose is achieved when the planning and zoning commission makes the "first move." Lurie,160 Conn. at 305-07. Further, in order to be valid, conditional approval does not require evidence that the other agency will act favorably on the future request. Blaker, 212 Conn. at 482. The court in Blaker interpreted the phrase "reasonably conditional" as:
 Contemplat[ing] giving the other agency, over which a planning and zoning commission has no control, the opportunity to review the . . .plans, thereby furthering the goal of cooperative action among municipal agencies, and that the record need not indicate whether the [other agency] is likely to approve the [plans].
Blaker, 212 Conn. at 482-83. Although the rule in Lurie arose in the context of a situation involving only municipal agencies, it should be equally applicable to situations involving municipal, state and federal agencies. Therefore, unless the grant of approval of Conte's application is otherwise invalid, the approval of the application with conditions was neither erroneous nor illegal.
The plaintiff argues that contrary to the requirement of Section 8-3c of the General Statutes, the commission's decision is void of the reasons therefor. She contends that the statements in the decision that the application complies with the zoning regulations are "unsupported conclusory statements: and insufficient to conform to the statute. The question for the court is whether the record supports those conclusions. See Gagnon v. Inland Wetlands Watercourses Commission, 213 Conn. 604
(1990). Conte argues that there is ample evidence to support the conclusions.
Because the court has already determined that the CT Page 6821 commission applied the wrong regulation to the Conte application, the commission's conclusion that the proposal conformed to that regulation is pointless. However, even if the court could find that the proper regulation was applied, because the commission misapplied that regulation to the land below the mean high water mark, the commission's finding of conformity was erroneous.
The appeal is sustained.
SYLVESTER, J.