[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from a decision of the Westport Conservation Commission (hereafter called the Commission), which approved applications to it with numerous conditions for the construction of two single family residences on two adjacent subdivision lots on Coleytown Road in Westport. The Commission is the inland wetlands agency under 22a-42 of the General Statutes and has enacted regulations pursuant to 22a-42a. The Commission is also one of the municipal agencies required to review regulated activities and permitted activities within waterway protection lines under the Westport Waterway Protection Lines Ordinance effective December 16, 1988 (WPLO), which is based on 7-147 of the General Statutes.
The plaintiffs question the legality of some of the conditions imposed by the Commission. They also claim that their subdivision lots are exempt from the Inland Wetlands regulations and that the WPLO is illegal on constitutional grounds and because it exceeds the authority to regulate under 7-147 of the General Statutes. The applications to the Commission for the two lots under both the wetlands regulations and the WPLO were heard and decided together. CT Page 9811
An appeal from a decision of an inland wetlands agency allows any person who owns land within a wetland or a watercourse involved in any regulation or decision of the inland wetlands agency to appeal pursuant to 8-8 of the General Statutes. (Section 22a-43(a) C.G.S.) Also, any person aggrieved by any decision of any commission or inland wetlands agency administering a waterway protection lines ordinance may appeal as provided by 8-8. Section7-14(b) C.G.S.
The plaintiffs are the owners of the lots involved in the applications to the Commission and are aggrieved by the Commission's decision on both applications. Winchester Woods Assoc. v. Planning Zoning Commission, 219 Conn. 303, 308. They are specially and injuriously affected by the conditions imposed by the Commission, which greatly restricts the use of the two lots. The plaintiffs also have standing under the concept of statutory aggrievement, Caltabiano v. Planning Zoning Commission, 211 Conn. 662,668, under 22a-43(a) as to the Commission's decision on the inland wetlands application. The Department of Environmental Protection was initially a party to this appeal, but has withdrawn its appearance because the plaintiffs have dropped their claim that the regulations result in an unconstitutional taking of their property.
When the Commission approved the applications, the resolution did not differentiate between conditions imposed based on the wetlands regulations and the WPLO. The location of the residences on both lots were restricted and the residence on Lot C was limited to three bedrooms. The Commission also required a 100 foot conservation easement on Lot B and a 75 foot conservation easement on Lot C, and a drainage easement on Lot C. Among the other numerous conditions were some based upon the aquifer protection overlay zone and aquifer impact provisions in sections 38 and 54 of the Westport zoning regulations. The aquifer protection overlay zone was effective August 11, 1989, and the aquifer impact regulations were effective as of January 26, 1981.
1. Exemption of lots under 8-26a C.G.S
Two initial claims of the plaintiffs are that the proposed improvements on the two subdivision lots are exempt from subdivision and zoning regulations enacted after 1962 and that the inland wetlands regulations cannot be applied to the subdivision lots. CT Page 9812
Lot B containing 2.2 acres and Lot C containing 1.5 acres are a part of a three lot subdivision which was approved by the Westport Planning and Zoning Commission in February, 1962. The subdivision map was filed in the Westport land records as Map No. 5327 on February 8th, 1962. (Exhibit A) The subdivision map contains no expiration date or any notes as to required subdivision improvements. The three subdivision lots are shown as having frontage on Coleytown Road which was then and is now a public highway. A residence was built on Lot A in 1962.
Lots B and C come squarely within the protection provided to approved subdivision lots by 8-26a(a) and (b) of the General Statutes. These statutes state that a subdivision plan which has been approved by a municipal planning commission and filed with the town clerk is not required to conform to a change in the subdivision regulations adopted by the planning commission or a change in the zoning regulations or boundaries of zoning districts which occurs after the approval and filing of the subdivision. While not quoted in this opinion, the phrasing of these statutes is clear and unambiguous, and the plaintiffs' lots comply with the exemption requirements contained in them. The courts do not construe statutes whose meaning is plain and unambiguous, West Haven v. Hartford Ins. Co., 221 Conn. 149, 156, or by construction add exceptions merely because it appears that good reasons exist for doing so. Simko v. Zoning Board of Appeals, 205 Conn. 413,418. Section 8-26a permanently prohibits the application of new subdivision or zoning regulations to subdivisions approved by the planning commission and recorded with the town clerk. Tondro, Connecticut Land Use Regulation, 2d Ed., pp. 219, 572; Land Use Law and Practice, Sec. 24.9, p. 471 and Sec. 53.5, p. 859. The original version of 8-26a, enacted in 1959, provided protection for only three years. This was increased to five years by Public Act 396 (1969) and changed to a permanent exemption in 1984 by Public Act 84-147, Sec. 2. The commission's reliance on the legislative history of the 1959 version of the statute is misplaced, since the 1969 and 1984 changes were made when the legislature decided that a three year exemption was inadequate.
The defendants contend that the enactment of two provisions concerning site plans in the same public act, 8-3(h) and 8-3(i) show intent to place a five year limit on the subdivision exemption in 8-26a. Section 8-3(h) expressly provides that changes in zoning regulations or zone boundaries do not affect improvements or proposed improvements on site plans for residential property which were approved prior to the effective date of the change. Section CT Page 98138-3(i) covers commercial as well as residential site plans approved on or after October 1, 1984 and requires completion of all physical improvements required by the site plan within five years after it was approved. The legislative history shows that a five year limitation on the exemption of site plans from changes in zoning regulations was considered and rejected, and intent to change the five year limitation on the exemption of subdivision lots from regulation changes in 8-26a to a permanent exemption. [Senate Proceedings, April 18, 1984, pages 1332, 1333, remarks of Senator Smith]. Site plans are protected from later changes in zoning regulations, provided the construction of the physical improvements shown on the site plan are completed within five years from approval.
While the statutory pattern for subdivisions and site plans is similar as to exemptions from changes in zoning regulations, there are material differences, and the site plan statutes cannot be grafted on to the subdivision statutes to directly contradict the clear language of 8-26a as modified by the same public act which made changes to the site plan statutes.
The defendants also claim, relying on 8-26c of the General Statutes, that the exemption under 8-26a has expired because houses have not been built on the two subdivision lots within five years after the subdivision was approved. Sections 8-26a and 8-26c
concern different problems. Section 8-26a provides protection for approved subdivision lots from later changes in the subdivision and zoning regulations once the planning commission has reviewed and approved the subdivision plan after determining that the land and lots shown on the map can be developed safely and in accordance with the considerations contained in 8-25 and 8-26 as implemented by the town's subdivision regulations. Lots created prior to subdivision regulations and not approved by the planning commission have not had this review and resulting public and consumer protections and are not entitled to the exemption. Sherman-Colonial Realty Corporation v. Goldsmith, 155 Conn. 175, 185. The protection given to the lots themselves encompasses residences and other structures built on the lots, which only have to comply with zoning regulations in effect when the subdivision was approved.
The legislature has clearly made a policy decision that once the division of the land and proposed lot layout has been reviewed by the municipality through its planning commission that the subdivision does not have to be reviewed again, and that the subdivision lots are not affected by subsequently enacted zoning CT Page 9814 regulations. The intent to create a permanent exemption is shown by the changes in 8-26a by increasing the exemption from three years to five years and then eliminating the time limit entirely. This prevents forced development of vacant lots, which benefits the municipality.
The purpose of 8-26c is to guarantee that the subdivision improvements, relating to public safety and access, are completed to prevent the municipality and the lot purchasers from incurring the cost of completing subdivision roads and other improvements, and to give lot purchasers safe access to their lots. It is intended to prevent subdivisions from being approved but never developed by providing an expiration date if the developer does not complete all work in the subdivision within five years after approval of the subdivision plan. The statute defines "work" as "all physical improvements required by the approved plan" (emphasis added) and defines what most of them are. The listed items are all public improvements, such as roads, drainage facilities and public utilities relating to the public areas in the subdivision and it does not include private improvements such as residences. Subdivision approval merely says that the lot is suitable for development. It does not require construction of a residence on an approved private lot. See Land Use Law Practice, Sec. 50.2; Connecticut Land Use Regulation, supra, p. 220. Approved subdivision lots lose the exemption in 8-26a only if the public improvements are not completed and the commission takes the steps as specified in 8-26c to cause expiration of the subdivision plan.
The Commission claims that the definition of work to be completed on an approved site plan in 8-3(i) also applies to subdivisions. This argument ignores the fact that there is a specific definition in 8-26c(b) for work to be completed in a subdivision, so that the definition in the subdivision statutes is controlling. While there are similarities in the two statutes, the definition in 8-26c(b) is more specific, showing legislative intent to make a distinction between work to be completed on a site plan and a subdivision. Subdivision plans usually do not show house locations for the approved subdivision lots, and none are shown for lots B and C. Site plans show all proposed physical improvements on the lots, such as precise building locations and dimensions, parking spaces and driveways, to prove conformity of the proposed development with the zoning regulations. Section8-3(g) C.G.S. Barberino Realty Development Corp. v. Planning and Zoning Commission, 222 Conn. 607, 613, 614. Subdivision approval is a planning function to promote safe and coordinated development CT Page 9815 of the municipality. Kiska v. Skrensky, 145 Conn. 28, 32.
Section 8-26c does not apply to the three lot subdivision containing Lots B and C. The subdivision was approved in 1962. It has frontage on a public highway and there is no indication that any subdivision improvements were not completed. The map shows no improvement required for the lots themselves. The subdivision map contains no expiration date, and the procedures for vacating the subdivision in 8-26c have not been taken because there is no legal basis for doing so. The lots remain as valid subdivision lots entitled to the statutory protection in 8-26a. As a result, they are exempt from changes in zoning regulations after 1962, including the aquifer impact and aquifer protection overlay zone regulations. [These regulations have minimal effect on single family residences, a permitted use in the aquifer protection overlay zone, and subject to certain safety standards, septic systems and fuel tanks are allowed as part of a residence].
There is no merit to the Commission's claim that the amendment to 8-26c adding subsection (c) by Public Act 91-153 affects the result here. That provision in the statute applies to subdivision approval under 8-26c only, namely subdivisions where there are uncompleted public improvements and where there is an expiration date on the subdivision map. This statute can be reconciled with8-26a if the latter statute applies only to subdivisions where the public improvements have been completed, in which case the subdivision lots are protected permanently from changes in the regulations. If the improvements are not completed the commission follows the procedures in 8-26c(b) to vacate the subdivision. The legislature is presumed to avoid statutes which contradict each other. Windham First Taxing District v. Windham, 208 Conn. 543, 553.
2. Residential home exemption under 22a-40(a) C.G.S
The plaintiffs claim that the Commission in its capacity as the town's inland wetlands agency had no jurisdiction over construction of a residence on each of the subdivision lots and that 4.0 of the inland wetlands regulations is preempted by the residential home exception in 22a-40(a)(2) of the General Statutes. The Commission claims that the statutory exemption for a residential home on an approved subdivision lot expired on July 1, 1987, and that even if the exemption applies, it does not cover a proposed swimming pool and tennis court on Lot B.
Section 4.0 of the Westport Wetlands and Watercourses CT Page 9816 Regulations (IWWR) defines permitted uses in wetlands and watercourses. It basically tracks 22a-40 of the General Statutes but omits the residential home exception in the statute.
While claims of exemptions under 22a-40 are strictly construed, Conservation Commission v. Price, 193 Conn. 414, 424, the power of local inland wetlands agencies to regulate wetlands and watercourses is pursuant to statutory authority granted by the state, and a local wetlands ordinance cannot prohibit a use which the enabling statute authorizes. Aaron v. Conservation Commission,183 Conn. 532, 544. See also Shelton v. Commissioner of Department of Environmental Protection, 193 Conn. 506, 517. As a result, the absence of the residential home exception in the IWWR is not controlling provided the proposed use qualifies under 22a-40(a)(2) of the General Statutes, which provides as follows:
 "(a) The following operations and uses shall be permitted in wetlands and watercourses, as of right:
 (2) A residential home (i) for which a building permit has been issued or (ii) on a subdivision lot, provided the permit has been issued or the subdivision has been approved by a municipal planning, zoning or planning and zoning commission as of the effective date of promulgation of the municipal regulations pursuant to subsection (b) of section 22a-42a
or as of July 1, 1974, whichever is earlier, and further provided no residential home shall be permitted as of right pursuant to this subdivision unless the permit was obtained on or before July 1, 1987." (emphasis added)
This exemption only covers lots in an approved subdivision, Manor Development Corp. v. Conservation Commission,180 Conn. 692, 700. It was held in Knapp v. Inland Wetlands Commission, 7 Conn. App. 283, 285, that a subdivision lot approved before the town adopted inland wetlands regulations was exempt under the statute, and the owner's right to construct a residence included the right to construct a septic system for it.
The plaintiffs' subdivision lots were approved in 1962, prior to the effective date of the IWWR. The proposed residences on the two lots are allowed as a matter of right, without regulation by CT Page 9817 the Commission, unless the amendment to the statute in Public Act 87-533, 2, eliminated the exemption.
Apparently the only case to address this issue is this court's decision in Paupack Development Corp. v. Conservation Commission,8 Conn. L. Rptr. 223, 226 (1993). As discussed in Paupack, there are two components to the residential home exception in the statute. Prior to the 1987 amendment, a residential home was allowed if either (1) a building permit was issued or (2) the residence was on a subdivision lot, and the permit was issued or the subdivision was approved by the planning commission, zoning commission or combined commission before the effective date of the inland wetlands regulations. The 1987 amendment adds the additional requirement that the permit, meaning the building permit, must be obtained by July 1, 1987. As the issuance of a building permit and approval of a subdivision lot are two separate actions, and the phrasing of the 1987 amendment shows that it only limits the building permit portion of the exemption, the statute still allows houses on subdivision lots, provided the lots existed as of the date of the town's inland wetlands regulations. It is not the function of the courts to supply omissions in a statute by construction or to add exceptions merely because it appears that there is a good reason for doing so. Simko v. Zoning Board of Appeals, 205 Conn. 413, 418; Johnson v. Manson, 196 Conn. 309, 315. The intent of the legislature is not found in what it meant to say, but in the meaning of the language actually used in the legislation. State Medical Society v. Board of Examiners in Podiatry, 208 Conn. 709, 727; Vaillancourt v. New Britain Machine/Litton, 224 Conn. 382, 391. See also Caltabiano v. Planning Zoning Commission, 211 Conn. 662, 666. If legislative intent was to eliminate the residential home exception entirely effective July 1, 1987, it would not have referred only to permits. It would have phrased the statute differently or repealed it entirely. Repealed statutes are dropped from reprinted versions of the General Statutes, but the annual printing in the six years since 1987 still contains the residential home exception in 22a-40(a). There is a material difference between subdivision lots approved by the planning commission and other pre-existing lots, and the latter have never qualified for the exemption. Aaron v. Conservation Commission, supra, 549. There are several public policy reasons why the legislature may have retained this distinction and repealed only the building permit portion of the residential home exception.
Finally, for reasons previously stated, 8-26c does not apply CT Page 9818 to the subdivision containing the plaintiffs' lots. Moreover, there is no direct correlation between that statute and 22a-40. Under the facts of this case, it is unnecessary to decide whether a lot in a lapsed subdivision as a result of 8-26c still qualifies under the residential home exception in 22a-40.
3. Uses incidental to residential home exemption
Even though the plaintiffs are entitled to build residences and improvements directly related to them such as a septic system, Knapp v. Inland Wetland Commission, supra, 285, the Commission is correct that the residential home exception does not allow additional optional structures on the lot such as swimming pools and tennis courts and other recreational facilities. Claims of exemptions under 22a-40 are strictly construed. Conservation Commission v. Price, supra, 424. To the extent that any swimming pool or tennis court was proposed for a wetland area, the Commission had jurisdiction to decide whether a regulated activities permit would be issued for those structures.
4. Constitutional claims
The plaintiffs also claim that the WPLO is invalid both on constitutional grounds and for exceeding the statutory authority granted in 7-147 of the General Statutes, and that even if it is valid, it was not properly applied by the Commission. The challenge to the WPLO on constitutional grounds cannot properly be decided in this case for several reasons. A claim that a land use agency exceeded its statutory authority can be raised in an administrative appeal from the agency's decision since it is a nonconstitutional claim. Payne v. Fairfield Hills Hospital,215 Conn. 675, 679; South East Property Owners Residents Assoc. v. City Plan Commission, 156 Conn. 587; Finn, Trustee v. Planning 
Zoning Commission, 156 Conn. 540; Moscowitz v. Planning Zoning Commission, 16 Conn. App. 303, 315. On the other hand, a property owner-applicant who submits an application for a permit to a land use agency cannot attack the constitutionality of the enabling statute, the municipal ordinance or land use regulations in an appeal from the agency's decision on the application. Bierman v. Westport Planning Zoning Commission, 185 Conn. 135, 139; J M Realty Co. v. City of Norwalk, 156 Conn. 185, 191. A constitutional attack upon the land use regulations must be made in a declaratory judgment action rather than in an appeal from denial of an application. St. John's Roman Catholic Church Corp. v. Town of Darien, 149 Conn. 712, 717; Cioffoletti v. Planning Zoning CT Page 9819 Commission, 209 Conn. 544, 563. An exception exists where the appellant does not challenge the ordinance or regulations as a whole, but only as applied to restrict development of his own property, Bombero v. Planning Zoning Commission, 218 Conn. 737,746; DeForest Hotchkiss Co. v. Planning Zoning Commission,152 Conn. 262, 269, but the plaintiffs' claims here go beyond that exception. Most important, a constitutional claim cannot be decided if the case can be resolved on a nonconstitutional ground. Adolphson v. Zoning Board of Appeals, 205 Conn. 703, 720; Maloney v. Pac, 183 Conn. 313, 324.
 5. Authority to regulate under waterway protection lines ordinance based on 7-147 C.G.S.
The statutory authority for a WPLO is 7-147 of the General Statutes. The original version of that statute pre-existed the inland wetlands statutes and they serve different purposes. The purpose of regulating and protecting inland wetlands is stated in22a-36 of the General Statutes. Flood and erosion control is only one purpose of wetlands regulation. Wetlands are defined based on soil types, not on whether they contain water. Watercourses for purposes of the inland wetland statutes include rivers, streams, brooks and waterways, which contain flowing water, but the definition also includes lakes, ponds, marshes and swamps which do not contain flowing water. Section 22a-38(16), C.G.S. Regulation under a waterway protection lines ordinance encompasses a smaller area, and 7-147 allows the municipality to "establish by ordinance lines along any part of any waterway beyond which, in the direction of the waterway, no permanent obstruction or encroachment shall be placed." In addition, "in establishing such lines" the municipality
 ". . . shall base their location on the boundaries of the area which would be inundated by a flood similar in size to one or more recorded floods which have caused extensive damages in such area or on a size of flood computed by accepted methods applicable generally throughout the state or a region thereof. The determination of the size of the flood and the boundaries of the inundated area shall take into consideration the effects of probable future developments. The position of the lines may vary from the boundaries of the inundated areas so as to minimize the area of CT Page 9820 land to be regulated when a portion of the inundated area does not contribute to the flood-carrying capacity of the waterway. The position of the lines shall . . . conform with the requirements of the federal government imposed as conditions for the construction of flood control projects.
Section 7-147 C.G.S. (some material omitted).
The purpose of the statute is to keep obstructions out of the areas adjacent to waterways which are subject to periodic serious floods so that the flood water carrying and storage capacity of the waterways and adjacent flood plains are not affected. An ordinance based on the statute is not intended to regulate wetlands except to the extent that wetlands (and watercourses) are within the waterway protection lines. The lines are intended to encompass only the areas inundated by floods, except that "the lines may vary from the boundaries of the inundated areas so as to minimize the area of land to be regulated when a portion of the inundated area does not contribute to the flood-carrying capacity of the waterway." In short, an ordinance based on the statute is not intended to give authority to an inland wetlands agency to regulate activities which are exempt under the inland wetlands statutes, except to the extent that the regulated areas are within the narrower confines of waterway protection lines, which are based on the flooding capacity of the waterways they abut.
The Westport WPLO, 148-1 through 148-18 of the Westport code, was enacted in 1988 and is based upon the amendment of 7-147
of the General Statutes which occurred earlier that year. A municipal land use agency can only act within the scope of the powers and duties prescribed by the enabling statute. Ghent v. Zoning Commission, 220 Conn. 584, 588. Municipalities have no inherent legislative powers and can exercise only those powers expressly granted to them by the legislature, or powers which are necessary to carry out an expressly delegated power or duty. Simons v. Canty, 195 Conn. 524, 529; City Council of West Haven v. Hall, 180 Conn. 243, 248. This concept applies to 7-147. Bottone v. Westport, 209 Conn. 652, 658. No administrative or regulatory body can modify, increase or change the statutory provisions under which it acquires authority unless the statute specifically grants it that power. State ex rel. Huntington v. McNulty, 151 Conn. 447,449. The delegation of authority to municipalities is narrowly construed. Simons v. Canty, supra, 530. CT Page 9821
The statement of purpose in 148-1 of the WPLO contains similar phrasing to the standards for granting or denying permission to build structures within waterways as stated in7-147(b) of the General Statutes. Section 148-2 defines permitted use, waterway and waterway protection lines. Waterway is defined as "any river, stream, brook, watercourse or tributary, both fluvial and tidal, including any contiguous backwater, pond or other body of water or any flood plain, swamp, marsh, bog or other wetlands." The plaintiffs claim that this definition exceeds and conflicts with the statute, 7-147. The dictionary definition of "waterway" is similar to watercourse or a running stream of water or a channel for water. See Black's Law Dictionary, 6th Ed.; Webster, New International Dictionary, 2nd Ed. The definition of "watercourses" in 22a-38 (16) contains a similar definition, and while it includes standing water, it is limited to bodies of water, and does not include wetlands, which are separately defined based on soil types. Westport had no statutory authority to expand the definition of waterway to include "other wetlands." While 7-147
does not specifically include a definition of "waterway", from the context of the statute and the description of waterway protection lines, it is apparent that the authority to regulate only encompasses areas adjacent to running bodies of water or adjacent to areas which are inundated during periodic floods.
To the extent that the Commission regulated areas beyond the waterway protection lines allowed by statute and set by the municipality after adopting an ordinance, it exceeded its authority and improperly regulated portions of the two lots.
It is implicit from 7-147 that in order to regulate obstructions or encroachments in waterways, that the municipality must first adopt an ordinance and then locate the waterway protection lines in accordance with the guidelines in the statute. The waterway at the rear of the plaintiffs' lots is the Aspetuck River. Section 148-3 of the WPLO contains the standards for establishment of waterway protection lines along several waterways, including the Aspetuck River. The line is set at the 25 year storm flood elevation along each edge of the waterway, plus an additional clear horizontal distance of 15 feet beyond the 25 year storm flood elevation for the Aspetuck River. In fact, 148-3 of the WPLO follows the phrasing of 7-147 as to the location of waterway protection lines and reads as follows:
The determination of the elevation of the 25 CT Page 9822 year storm shall take into consideration the effects of probable future developments.
 The position of the lines may vary from the 25 year storm elevation so as to minimize the area of land to be regulated when a portion of the inundated area below said elevation does not contribute to the flood-carrying capacity of the waterway.
 When the existing waterway, because of natural or man-made constrictions, is such that such lines cannot be established by, standard engineering methods, a channel maybe adopted, whereby the removal of such constrictions may be anticipated so that a reasonable delineation of the 25 year storm elevation may be established.
 When the 25 year flood boundary falls along the channel banks, the lines shall be placed at the top of each bank along the waterway.
Sections 148-3(B) through (E), WPLO.
While the enactment of the ordinance itself by the Representative Town Meeting (RTM) was a legislative function, the regulation of land under the WPLO, delegated in part to the Commission, was an administrative function. In order to regulate land use, an administrative agency usually must have regulations to apply to applications made to it unless the enabling statute precludes such a requirement. Monroe v. Middlebury Conservation Commission, 187 Conn. 476, 484-85, and cases discussed therein. Assuming the WPLO has adequate standards implementing the statute, the municipal agency administering the ordinance is controlled and limited by its provisions. R K Development Corporation v. Norwalk,156 Conn. 369, 375. Section 148-3 established the standard for location of the waterway protection lines along the Aspetuck River and other waterways in the town. The Commission's authority to regulate is controlled by those lines and boundaries, and it cannot regulate beyond them. Implicit in this requirement is that the lines authorized by the ordinance must be established on each property to which the WPLO is applied, both to prevent over-regulation of the property and to protect the waterway in the public interest from dangerous encroachments within the floodway CT Page 9823 and the adjacent flood plain area. The town never determined the 25 year storm elevation on the two lots, and arbitrarily picked the 100 year storm elevation instead. This deviated from 148-3 of the WPLO, and evidence before the Commission indicated that the 25 year line was considerably closer to the Aspetuck River. Section7-147(a) imposes the duty on the agency designated by the ordinance to establish the waterway protection lines. There is nothing in the statute imposing that obligation on private property owners or applicants. While it is questionable whether the ordinance itself could shift that obligation from the municipality to property owners, the WPLO contains no such requirement.
 6. Levels of review under Westport waterway protection lines ordinance
The plaintiffs make a general attack upon the jurisdiction of the Conservation Commission to decide waterway protection lines applications on the ground that the multi-level system of review in 148-6 through 148-11 is an illegal delegation of authority by the RTM in that it violates 7-147 of the General Statutes. The statute provides that the ordinance is administered "by the legislative body of the town . . . or by the municipal board, commission, department or inland wetlands agency which the legislative body may authorize by ordinance to administer" it. It also states that in installing the lines "the legislative body or such board, commission, department or inland wetlands agency. . . ." shall consider certain stated factors. The plaintiff argues that the use of the word "or" in the statute limits the legislative body, here the RTM, to designate itself or one municipal agency to administer the ordinance and that multiple levels of review exceed statutory authority. The Commission and the town contend that the statute does not prohibit multiple levels of review and that it allows the ordinance to dictate which agency or agencies administer the ordinance and carry out the provisions of 7-147. Other than quoting portions of the statute, neither side cites any cases construing 7-147 or any similar statute which determines whether and to what extent multiple levels of review are allowed.
Under Westport's complicated scheme, the Town Engineer first determines if the proposed use of project is a permitted use under the ordinance and affects the flooding and water storage capacity of the waterway. The use is then reviewed by the Conservation Director to decide if it has an adverse impact upon the natural resources and ecosystems of the waterway. Section 148-6. If a regulated activity is involved, 148-7 requires the approval of CT Page 9824 both the Flood and Erosion Control Board and the Conservation Commission. The Flood and Erosion Control Board reviews the application to determine whether the proposed activity causes flooding or impacts the flood-carrying and water storage capacity of the waterway. Section 148-8. The Conservation Commission determines whether the activity causes water pollution, erosion or any environmental problems to the waterway. Sections 148-9 and 148-10. The RTM reviews the decision of either the Flood and Erosion Control Board or the Conservation Commission. Section 148-11. Review by the RTM requires a written petition for review submitted by either (1) two members of the RTM itself or (2) 20 electors of the Town of Westport, filed within thirty days from the date of the decision of the Flood and Erosion Control Board or the Conservation Commission. The petition for review must be received by the RTM Moderator or the Town Clerk within the thirty day time limit. Section 148-11 goes on to provide that the RTM must decide the petition for review within ninety days after receipt of it, and that if it does not act within that time period the application shall be deemed approved. Any person aggrieved by a final decision by the Flood and Erosion Control Board, the Conservation Commission or the RTM may appeal to the Superior Court within thirty days after notice of the decision under 8-8 of the General Statutes. Section 148-14, WPLO; 7-147(b) C.G.S.
This appeal is not an appropriate action to review the plaintiffs claim that the multi-tiered system of approval in Westport does not conform to 7-147 or is an illegal delegation of authority by the RTM. As previously noted, the issue is not adequately briefed by either side, and goes to the entire structure of the ordinance itself. While the Town of Westport is a party to this appeal, neither the Flood and Erosion Control Board or the RTM are parties, and residents of Westport may have an interest in a nonconstitutional and constitutional attack upon the entire ordinance. Under the circumstances, this challenge to the ordinance must be resolved by a declaratory judgment action. Bombero v. Planning Zoning Commission, 218 Conn. 737, 745.
7. Claim of inferred approval of WPLO application
The plaintiffs claim that an inferred approval of the application to the Commission occurred for failure to comply with a portion of 148-7 of the WPLO which reads as follows:
 "Both the Flood and Erosion Control Board and the Conservation Commission "shall render a CT Page 9825 written decision to the Representative Town Meeting Moderator within fifteen (15) days after the second regularly scheduled meeting following the date the application is filed. Each body shall notify the applicant by certified mail of its decision within fifteen (15) days from the date of the decision. Failure of either body to act within the prescribed time period shall be deemed an approval of the application by that body."
In this case the Commission's decision occurred at its December 8, 1992 meeting. On December 11, 1992, the plaintiffs were notified of the decision, and it was published in a local newspaper. There was no direct notice to the RTM Moderator. However, this did not result in an inferred approval. The last sentence of 148-7 of the WPLO results in an inferred approval of the application if the Conservation Commission fails to "act within the prescribed time period," namely, fifteen (15) days after the second regularly scheduled meeting following the date the application is filed. The purpose of this type of provision is to prevent the agency from indefinitely stonewalling an application. The failure to give notice of the decision to either the applicant or the Town Meeting Moderator within fifteen days of the Commission's decision is not a failure to act on it, but rather a failure to communicate the action that has been taken.
Failure to give notice to the RTM Moderator is an academic issue in this case. The plaintiffs received notice of the decision of December 8, 1992 and promptly appealed the decision. The appeal was served on the defendants on December 21, 1992, less than fifteen days after the Commission's decision. The purpose of notice to the RTM Moderator relates to the possibility of review by the RTM under 148-11 of the WPLO. Whether the time limit is mandatory or directory only depends upon whether the action is essential to the thing to be accomplished, namely, whether it relates to a material or immaterial matter — to matters of convenience or of substance. Gallup v. Smith, 59 Conn. 354, 358; Zoning Board of Appeals v. Freedom of Information Commission,198 Conn. 498, 503, 504. This requirement is directory only. See Arrieu v. Town of Litchfield, 17 Conn. App. 320, 324 (failure of zoning board of appeals to notify zoning commission of pending variance application was directory). In Farr v. Eisen, 171 Conn. 512,516, a subdivision application to a planning commission was not automatically approved under 8-26 of the General Statutes CT Page 9826 where the commission denied the application within the statutory time limits but failed to publish the certificate of denial. See also Merlo v. Planning Zoning Commission, 196 Conn. 676, 682-684
(automatic approval denied where a planning commission's motion to approve a subdivision made within the 65 day time limit failed to pass but the commission did not pass a second motion to disapprove the application).
The plaintiffs also claim that in making its decision the commission failed to consider factors in 7-147(b) of the General Statutes and the WPLO requiring that consideration be given to similar encroachments along the waterway, that the Commission's findings are not supported by substantial evidence and are based upon information received after the public hearing. There is an inadequate factual basis to decide the first claim even though 148-1 and 148-10 require the Commission to consider the effect of similar encroachments along the waterway.
8. Claim of illegal receipt of evidence after the public hearing
The plaintiffs have identified several documents that were received by the Commission after the public hearing which they claim were relied upon by the Commission and affected the conditions of approval for the two lots. This evidence includes phone messages from the Health Department and an employee of Bridgeport Hydraulic Company, a letter from a private organization on the size of the conservation easement, records of the Tax Assessor and the Health Department as to other properties in the area and restrictions on the number of bedrooms, a letter from the Department of Environmental Protection to the Commission on creation of wetlands to compensate for wetlands lost through construction and a similar report from the Council on Environmental Quality, a flood insurance study for the Town of Westport, the Westport Guide to Groundwater Aquifer Protection, the section of the zoning regulations on aquifer protection, soil interpretation data for certain soil types, a wetlands map, and a memorandum summarizing three Connecticut Supreme Court cases. As a result of the court's rulings on the other issues in this appeal and the necessity for reconsideration of the application by the Commission, extensive analysis of these documents and their effect on the conditions of approval is academic.
The Commission made numerous findings in an extensive and carefully draft document which accompanied its resolution of December 8, 1982, but it is difficult to pinpoint the effect of the CT Page 9827 post-hearing documents. An administrative agency cannot consider evidence submitted after the public hearing is closed without giving interested parties an opportunity to inspect and question it and offer evidence in rebuttal. Parish of St. Andrew's Church v. Zoning Board of Appeals, 155 Conn. 350, 358; Blaker v. Planning 
Zoning Commission, 212 Conn. 471, 478-80; Wasicki v. Zoning Board,163 Conn. 166, 173, 174.
There is an exception to this rule where an administrative agency obtains professional assistance in carrying out its responsibilities, which allows it to receive comments after the public hearing from its staff and consultants. Spero v. Zoning Board of Appeals, 217 Conn. 435, 444; Hawkes v. Town Plan Zoning Commission, 156 Conn. 207, 212. This exception to the bar on receiving post hearing evidence is limited to the agency's consultants, and does not allow the agency to solicit information from non-consultants even though they may not be proponents or opponents of the application. Even where reports are submitted after the hearing by agency consultants, there is the additional limitation that the reports cannot be based on facts or evidence not previously presented to the agency at the public hearing and made part of the record at that time. Norooz v. Inland Wetlands Agency, 26 Conn. App. 564, 573, 574. Additional information or documents from the consultants beyond the record at the public hearing requires the chance for cross-examination and rebuttal if the data is material and prejudicial, or relied upon by the agency, even though the agency's consultants were neither proponents or opponents of the application. Id. If the Commission intends to rely upon existing documents, even if they are general reports on land use in the municipality, they should be identified and made part of the record at the public hearing so that participants at the hearing can examine, discuss and comment on them at that time. In addition, where the agency chooses to rely upon special knowledge or expertise of some of its members, it must bring the matter up at an appropriate stage of the proceedings, generally at or prior to the public hearing, so that anyone adversely affected by the information has an opportunity to question and rebut it. Feinson v. Conservation Commission, 180 Conn. 421, 425, 429. This would include data in reports on technical matters relied upon by the Commission which were not made part of the record at the public hearing.
Where improper evidence is received after the public hearing, a rebuttable presumption of prejudice arises and the burden shifts to the defendants to show that the evidence did not prejudice the CT Page 9828 proceedings. Blaker v. Planning Zoning Commission, 212 Conn. 471,478-80. There must be a showing of substantial prejudice resulting from illegal receipt of evidence by the agency in order to reverse its decision. Carlson v. Fisher, 18 Conn. App. 488,504; Connecticut Natural Gas Corp. v. Public Utilities Control Authority, 183 Conn. 128, 139.
In this case there were numerous documents received after the hearing by the Commission, and the defendants have not shown that this information did not influence the conditions attached to approval of the applications. A comparison of the resolution and findings with the documents themselves indicates that to some extent the documents did affect the findings and conditions in the resolution. Therefore, the post-hearing evidence was prejudicial the plaintiffs.
9. Standard for judicial review
The parties dispute whether or not there was substantial evidence that the construction on the lots would adversely affect the waterway. The standard for judicial review of a decision of a municipal agency which administers a waterway protection lines ordinance and makes a decision on the merits has not been determined by the case law. The usual standard in land use cases is whether the evidence in the record reasonably supports the agency's decision and the reasons given for it, and if so, the court cannot substitute its judgment as to the weight of the evidence for that of the agency. Housatonic Terminal Corp. v. Planning Zoning Board, 168 Conn. 304, 306; Westport v. Norwalk,167 Conn. 151, 158, 161. A similar standard exists for inland wetlands appeals. Huck v. Inland Wetlands Watercourses Agency,203 Conn. 525, 539-542; Tanner v. Conservation Commission,15 Conn. App. 336, 339-341. There is some evidence which supports the Commission's findings even though there is substantial countervailing evidence in the record from the applicants. No matter which standard of judicial review is applied, it is difficult to decide whether the commission's findings should be upheld because they may have been influenced by the documents submitted after the public hearing, such as the flood insurance study referring to the 100 year flood. A ruling is premature since the Commission must reconsider its decision after the applicant responds to the post-hearing evidence in the record and a new decision is made consistent with the Commission's jurisdiction over the applications. CT Page 9829
10. Conservation easement condition of approval
While the plaintiffs challenge many of the conditions imposed by the Commission in allowing restrictive use of the two lots, it is unnecessary to review all the specific claims since the Commission must reevaluate its decision. However, the plaintiffs' objection to the size of the conservation easement should be addressed. The plaintiffs had no objection to an easement 25 feet in width along the Aspetuck River at the rear of the lots. The Commission conditioned approval upon a 100 foot wide conservation easement at the rear of lot B, and a 75 foot wide conservation easement on lot C, and required that the easement be conveyed to the Commission.
The site plan (exhibit 6) contains the floodway line and the 100 year flood line. The floodway is the channel of a stream plus any adjacent flood plan area that must be kept free of encroachment during a 100 year flood under flood control standards of the Federal Emergency Management Agency. (There is an adjacent area known as the "floodway fringe" which is the area of the flood plain which can be completely obstructed during a 100 year storm with no or at most a minimal increase in water surface elevations). The area below the floodway line on lots B and C is considerably less than the land within easements imposed by the Commission.
Section 7-147 of the General Statutes specifically provides that the position of the waterway protection lines maybe less than the boundaries of the inundated area so as to minimize the area of land to be regulated when a portion of the inundated area does not contribute to the flood carrying capacity of the waterway. [The statute also provides that the position of the lines shall conform with the requirements of the federal government imposed as conditions for the construction of flood control projects. Under federal standards, construction in the floodway fringe is allowed.] Under 148-3 of the WPLO, the waterway protection line is the 25 year storm flood elevation of the river (which is less than the 100 year storm line) plus 15 feet. Section 7-147 prohibits any permanent obstruction or encroachment below the waterway protection lines unless permission is granted by the agency administering the ordinance. There is nothing in the statute that allows the Commission to require the land between the line and the waterway to be conveyed to the town, or to restrict development above the established lines. While any such provision in the municipal ordinance would exceed the statutory grant of authority in 7-147
and be illegal on that basis, Simons v. Canty, supra, 530, 532, CT Page 9830 Buonocore v. Branford, 192 Conn. 399, 402, 403, the WPLO contains no such provision. In fact, the only regulated activities under the WPLO are the placing of fill and the encroachment by construction of buildings or other permanent structures within the Waterway protection lines. (Section 148-5.)
In the absence of statutory authority and an ordinance provision the Commission cannot impose a conservation easement as part of waterway protection line review. In addition, if all of the applicants' construction was above the waterway protection lines, the Commission would have constitutional problems in requiring an easement, even though it was in the public interest, and it cannot extort the easement out of the property owner as a price of approval. Nollan v. California Coastal Commission,483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987).
The Commission may have imposed the conservation easement here in conjunction with review and approval of a regulated activities permit in its capacity as an inland wetlands agency. Since the proposed residences for the two lots are exempt under the residential home exception in 22a-40, the legality of a conservation easement as part of a wetlands permit is not an issue in this case.
11. Conclusion
The court cannot perform the administrative function of the agency and decide what conditions are appropriate for a regulated activity under 148-9 and 148-10 of the WPLO. Moreover, it is not clear which conditions were imposed by the Commission in its other capacity as an inland wetlands agency. In a proper case the court can revise the agency's decision, 8-8(1) Connecticut General Statutes, or if there is only a single conclusion that the agency could reasonably reach, the court can direct it to grant the application. Potter v. Board of Selectmen, 166 Conn. 376, 380; DeMaria v. Enfield Planning Zoning Commission, 159 Conn. 534,540; 8-8(1) Connecticut General Statutes. That is not appropriate here.
The Commission is directed to reconsider the applications and make a decision consistent with this opinion. The applications can be reconsidered without another public hearing, Gervasi v. Town Plan and Zoning Commission, 184 Conn. 450, 454, but the plaintiffs must be given an opportunity to present additional evidence to the Commission on the evidence received by the Commission after the CT Page 9831 prior public hearing. See Londonderry Woods Development Inc. v. Planning Commission of Ledyard, 5 Conn. L. Rptr. 28 (1991).
The appeal is sustained.
ROBERT A. FULLER, JUDGE