[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
I. Facts:
On July 30, 1999, the plaintiff, James W. Cahill, brought this appeal against the defendants, the Old Saybrook Planning Commission (the commission), David A. Maynard and Shary A. Maynard. The appeal challenges the commission's decision to approve a subdivision application (the application).
The return of record (ROR) reveals the following facts. On April 21, 1999, the Maynards filed an application for approval of a one lot residential subdivision located on the east side of Ingham Hill Road in Old Saybrook, Connecticut (the property). (ROR, Item 8). There is presently no means of accessing the property. (ROR, Item 8). Chalkers Mill Pond lies between the property and Ingham Hill Road, thus precluding access via Ingham Hill Road. (ROR, Item 8). The property is also abutted by an existing subdivision, approved on October 21, 1985 and subsequently recorded, which consists of four lots (the Merritt Lane subdivision). (ROR, Items 8, 28; Supplemental Return of Record [Supp. ROR], Item 1).
Joseph H. Gleason conveyed the property to the Maynards. (ROR, Item 4). The application proposes access to the property in accordance with an easement agreement entered into between the Maynards and Gleason in connection with the sale of the property. (ROR, Items 8, 24). Specifically, the application proposes a right of way over a portion of Merritt Lane. (ROR, Items 8, 24). Merritt Lane serves as a right of way to the four lots within the Merritt Lane subdivision. (ROR, Items 13, 28). A portion of Merritt Lane is owned by Gleason and the remainder of Merritt Lane is owned by Cahill. (ROR, Item 24). The proposed right of way only seeks access over that portion of Merritt Lane owned by Gleason. (ROR, Items 24, 35). From the end of Gleason's ownership CT Page 7400 interest in Merritt Lane, the application proposes access to the property by means of a driveway on Gleason's remaining property. (ROR, Items 24, 28). Due to the severity of the slope on the proposed driveway site, the Maynards filed a request for a waiver of section 6.4.1 of the Old Saybrook subdivision regulations (regulations), which allows a maximum grade for driveways of twelve percent. (ROR, Item 13).
The commission discussed the application at six of its meetings on April 7, 1999, May 5, 1999, May 19, 1999, June 2, 1999, June 16, 1999 and July 7, 1999. (ROR, Items 5, 14, 17, 25, 31, 33, 35). At its meeting on July 7, 1999, the commission granted the application. (ROR, Items 32, 35).
As noted, Cahill is the owner of the remaining portion of Merritt Lane. He also owns a vacant lot along the portion of Merritt Lane owned by Gleason, which is adjacent to the Maynard's proposed driveway. (ROR, Item 38, p. 7). He further owns of one of the four lots within the Merritt Lane subdivision. (ROR, Item 38, p. 11; Supp. ROR, Item 1).
Cahill appeals to this Court, pursuant to General Statutes § 8-8
(b), from the commission's decision, on the ground that the commission acted illegally, arbitrarily and in abuse of its discretion in approving the application. Specifically, Cahill argues that the application constitutes a resubdivision, rather than a subdivision, thereby requiring a public hearing under General Statutes § 8-18. He further argues that the commission erroneously approved a waiver of regulation § 6.4.1.
II. Aggrievement:
At the hearing on this matter, the Maynards and the commission argued that Cahill is not aggrieved under General Statutes § 8-8 because he only owns land abutting the proposed right of way on Merritt Lane and does not own property that abuts or is within a one hundred foot radius of the Maynard's proposed home.[1]
"[P]leading and proof of aggrievement are prerequisites to the trial court's jurisdiction over the subject matter of a plaintiff's appeal."Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831
(1996). Section 8-8 (b) of the General Statutes provides, in pertinent part, that "any person aggrieved by any decision of a [planning commission] may take an appeal to the superior court. . . ." Section 8-8
(a)(1) of the General Statutes provides that an aggrieved person, for purposes of § 8-8, "includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the [planning commission]." Furthermore, section 8-8
CT Page 7401 reveals "a significant liberalization of the law of aggrievement. . . ."Caltabiano v. Planning Zoning Commission, 211 Conn. 662, 668,560 A.2d 975 (1989).
Merritt Lane is a private residential street within the Merritt Lane subdivision, which may not provide access to more than four abutting lots under regulation § 5.3.5b. (ROR, Item 13). Because the Maynards' lot would be the fifth lot with access through Merritt Lane, the Maynards requested a waiver of this regulation, which was granted by the commission. (ROR, Items 13, 35).[2] Therefore, although the Maynards do not own Merritt Lane, the commission considered the Maynards' use of Merritt Lane in determining whether to grant the application. As such, Merritt Lane was "a portion of the land involved in the decision of the [planning commission]" under § 8-8 (a)(1). Accordingly, as Cahill owns property abutting this portion of Merritt Lane, he is found to be aggrieved under § 8-8 (a)(1).[3]
III. Timeliness:
An appeal from a planning commission's decision must "be commenced by service of process . . . within fifteen days from the date that notice of the decision was published. . . ." General Statutes § 8-8 (b). The return of record reveals that the commission published notice of its decision in the Hartford Courant on July 15, 1999. (ROR, Item 37). On July 27, 1999, Sarah Becker, Town Clerk for the Town of Old Saybrook, and David Hoey, Chairman of the Old Saybrook Planning Commission, were served. The Maynards were also served on July 27, 1999. Accordingly, the appeal is timely.
IV. Scope of Review:
The function of a trial court on appeal from a planning and zoning commission's decision is to determine whether substantial evidence exists in the record to support the commission's decision. See DeBeradinis v.Zoning Commission, 228 Conn. 187, 199-200, 635 A.2d 1220 (1994). A commission has reasonable discretion in interpreting and applying its zoning regulations to the facts of each case. See Irwin v. Planning Zoning Commission, 244 Conn. 619, 627-28, 711 A.2d 675 (1998). "Courts are not to substitute their judgment for that of the board . . . and decisions of local boards will not be disturbed so long as honest judgment has been reasonably and fairly exercised. . . ." (Citation omitted; internal quotation marks omitted.) Bloom v. Zoning Board ofAppeals, 233 Conn. 198, 206, 658 A.2d 559 (1995).
The plaintiff has the burden of demonstrating that the commission acted improperly. See id. The court is limited to determining whether the CT Page 7402 commission's act was "arbitrary, illegal or an abuse of discretion." Id., 205-06.
V. Discussion:
A. Whether the application constitutes an application for a resubdivision requiring a public hearing:
Cahill argues that the application constitutes an application for a resubdivision under General Statutes § 8-18, thereby requiring a public hearing, because the application will affect Merritt Lane and Chalkers Mill Pond. General Statutes § 8-26 provides, in pertinent part, that "[n]o plan of resubdivision shall be acted upon by the commission without a public hearing." A resubdivision is "a change in a map of an approved or recorded subdivision or resubdivision if such change (a) affects any street layout shown on such map [or] (b) affects any area reserved thereon for public use. . . ." General Statutes §8-18.
1. Effect on Merritt Lane:
Cahill first argues that the application is a resubdivision because the application proposes to widen Merritt Lane from twenty-five feet to fifty feet and, thus, will affect a street layout as indicated under § 8-18
(a). In connection with the sale of the property, Gleason and the Maynards entered into an easement agreement. (ROR, Item 24). It provides, in pertinent part, that "[t]he easement shall be 50 feet in width and shall be for the purpose of providing ingress and egress to the premises conveyed, on foot and by vehicle, and also for the placement of utility services for said conveyed premises. . . ." (ROR, Item 24). With respect to the portion of the easement on Merritt Lane, the easement agreement provides that "[t]he center line of said right-of-way is described as beginning at a point in the northerly line of Millrock Road in the middle of its intersection with Merritt Lane, thence running northerly along the center line of said Merritt Lane to a point which is 50 feet southerly from the southerly boundary of land now or formerly owned by James Cahill. . . ." (ROR, Item 24).
Contrary to Cahill's claim, the record is devoid of any evidence that Merritt Lane will be widened. The record merely reveals that Gleason gave the Maynards a fifty foot wide easement, within which lies Merritt Lane, in order to access their property. The easement along Merritt Lane is double the width of Merritt Lane. Nonetheless, it is evident that the easement may be used for purposes other than physical access to the property. For example, the easement agreement specifically states that the Maynards may use the right of way for the placement of utility CT Page 7403 services. (ROR, Item 24).
Moreover, the application does not propose to alter the existing layout of Merritt Lane. (ROR, Item 8). The record does not contain any plans proposing to change Merritt Lane as it presently exists. Nor has the commission authorized any changes to Merritt Lane. Accordingly, the Maynards' easement along Merritt Lane does not "affect any street layout" under § 8-18 (a) and the application, therefore, does not constitute a resubdivision requiring a public hearing on this basis.
Cahill further argues that the application will affect Merritt Lane because the project engineer raised concerns regarding the potential for erosion and sedimentation on Merritt Lane due to the steep grade of the proposed driveway. The clause "affects any street layout shown on such map" in § 8-18 (a) seems to encompass a change in the schematic arrangement of a street on a subdivision map. The effect of driveway drainage on a street, therefore, does not appear to be a proper issue under § 8-18 (a).
Moreover, whether the application will cause such problems on Merritt Lane was an issue of fact before the commission. "[T]he determination of issues of fact are matters solely within the province of the agency."Primerica v. Planning Zoning Commission, 211 Conn. 85, 96, 558 A.2d 646
(1989). A trial court may not substitute its judgment for that of the administrative tribunal. See Frito-Lay, Inc. v. Planning ZoningCommission, 206 Conn. 554, 572-73, 538 A.2d 1039 (1988).
Nonetheless, the record reflects that the commission adequately considered the potential for erosion and sedimentation due to the proposed driveway. The commission received a letter from the project engineer, which states, in pertinent part, that "[t]he first 400+ feet of the [proposed driveway] . . . is of particular concern. Given the drainage areas tributary to [this location] and the surrounding topography, potential for erosion and sedimentation of the stormwater drainage system with Merritt Lane . . . exists." (ROR, Item 22). Moreover, at the meeting on June 16, 1999, the commission heard testimony from the Maynards' surveyor regarding erosion control. (ROR, Item 38, p. 2-3). Lastly, the commission's final resolution conditions approval of the application on the Maynards agreeing "to accept financial responsibility for a proportionate share [of] the repairs, improvements and maintenance of Merritt Lane, and for all of the financial responsibility . . . for any excessive driveway drainage from the Driveway into the drainage system of Merritt Lane. . . ." (ROR, Item 35).
Accordingly, the commission's decision not to deny the application CT Page 7404 under § 8-18 (a), due to the driveway's potential effect of erosion and sedimentation on Merritt Lane, was not illegal, arbitrary, or an abuse of its discretion. The application, therefore, does not constitute a resubdivision requiring a public hearing on this basis.
2. Effect on Chalkers Mill Pond:
As noted, § 8-18 (b) provides that a resubdivision occurs where there "is a change in a map of an approved or recorded subdivision or resubdivision if such change . . . affects any area reserved thereon for public use. . . ." Cahill argues that the application constitutes a resubdivision under § 8-18 (b), thus requiring a public hearing, because it will affect Chalkers Mill Pond. In support thereof, Cahill refers to an "Easement and Maintenance Agreement Concerning Chalkers Mill Pond," (the Chalkers Mill Pond agreement), which the town of Old Saybrook entered into on March 7, 1983.
The Chalkers Mill Pond agreement provides, in pertinent part, that "said pond [will] be repaired and maintained for the benefit of wildlife habitat, scenic vistas, prevention of erosion, and for the beneficial effect on property values in the area . . . [The town has the right], in perpetuity, to go upon and use the waters of said pond for the purpose of passive recreation. . . ." (ROR, Item 39). Accordingly, Chalkers Mill Pond can be construed as land reserved for public use under § 8-18
(b).
Nonetheless, Chalkers Mill Pond is not a part of the Merritt Lane subdivision. The Merritt Lane subdivision plans indicate that the "edge of pond is boundary." (Supp. ROR, Item 1). There are no areas reserved for public use in the Merritt Lane subdivision. (Supp. ROR, Item 1). Moreover, the Chalkers Mill Pond agreement itself does not constitute an approved subdivision map nor was it executed in conjunction with an approved subdivision. Accordingly, Chalkers Mill Pond is not an "area reserved thereon [the subdivision] for public use" under § 8-18 (b).
Moreover, whether the application will affect Chalkers Mill Pond was an issue solely within the discretion of the commission. See Primerica v.Planning Zoning Commission, supra, 211 Conn. 96. Notwithstanding, the record reveals that the commission adequately considered the effect of the application on Chalkers Mill Pond. The commission received a letter from the Conservation Commission commenting that care should be taken to minimize erosion and sedimentation, as well as to preserve the integrity of the pond and surrounding areas. (Supp. ROR, Item 4). The record also reflects that the commission heard testimony from the Maynards' surveyor regarding the prevention of erosion and the prevention of the diversion of water with respect to Chalkers Mill Pond. (ROR, Item 38, p. 2-3). The CT Page 7405 record further reveals that the commission considered the effect of the application on the integrity of surrounding wetlands and the quality of water in the pond. (ROR, Item 38, p. 8-9). In fact, the commission conditioned approval of the application on the Maynards' agreement "to accept financial responsibility for any excessive driveway drainage . . . into the Pond." (ROR, Item 35).
Accordingly, the commission's conclusion that the application will not adversely affect Chalkers Mill Pond was not illegal, arbitrary, or an abuse of its discretion. The application, therefore, does not constitute a resubdivision requiring a public hearing on the basis that Chalkers Mill Pond is affected under § 8-18 (b).
Furthermore, although the commission did not hold a public hearing on the application, Cahill's objections were taken into consideration by the commission. Cahill was present at the commission's meeting on June 16, 1999 and was permitted to state his objections to the application. (ROR, Item 38, p. 11). Also, Cahill's attorney submitted a letter with exhibits, dated June 1, 1999, expressing Cahill's concerns with respect to the application. (ROR, Item 24). Additionally, Cahill submitted a letter to the commission, dated June 16, 1999, stating his objections to the application. (ROR, Item 29). As such, the record reveals that Cahill was given the opportunity to be heard.
B. Whether the commission erroneously approved a waiver of regulation § 6.4.1 by allowing the Maynards to build a fifteen percent slope driveway:
Cahill argues that the commission erroneously approved a waiver of regulation § 6.4.1 by allowing the Maynards to build a fifteen percent slope driveway beyond the twelve percent slope permitted by § 6.4.1 and, therefore, acted illegally, arbitrarily and in abuse of its discretion. Specifically, he argues that (1) the application fails to state how the proposed waiver meets the requirements of regulation § 3.4.1; (2) the commission failed to state the reasons for which the waiver was granted; and (3) the commission's finding that the Maynards met the hardship requirement of § 3.4 was incorrect.
Under regulation § 3.4, the commission may waive its subdivision regulations. In order to approve a waiver, the commission must find that "extraordinary hardships or practical difficulties may result from compliance" with its regulations. Further, the commission must find that "(1) [t]he granting of a waiver will not have a significant adverse impact on adjacent property or on public health and safety; (2) [t]he conditions upon which the request for a waiver are based are unique to the proposed subdivision for which the waiver is sought and are not CT Page 7406 applicable generally to other potential subdivisions; [and] (3) [t]he waiver will not create a conflict with [any Town ordinance or regulation]." (ROR, Item 3, Regulation § 3.4.1).
Moreover, "[t]he Commission shall state upon its records the reason for which a waiver is granted in each case. . . . A request for any such waiver shall be presented in writing by the applicant at the time when the subdivision application is first submitted. The request shall state how the proposed waiver meets the requirements stated above." (ROR, Item 3, Regulation § 3.4.1).
Cahill first argues that the application fails to state how the proposed waiver meets the requirements of § 3.4.1. Although the § 6.4.1 request for waiver was not submitted with the original application, it was presented to the commission at its regular meeting on May 5, 1999, prior to the commission's approval of the application. (ROR, Item 13). The request for waiver specifically states that the waiver was necessary "[d]ue to the severe slopes on the property and to avoid large amounts of excavation. . . ." (ROR, Item 13). Moreover, the request for waiver specifically cites that the request meets each element of § 3.4.1 and, accordingly, meets the requirements of § 3.4.1 (ROR, Item 13).
Second, Cahill argues that the commission failed to state the reasons for which the waiver was granted. The commission's resolution specifically states that "the conditions on which the waiver is based are unique to [the property due to] the topography and slope in the area of the proposed driveway access" and the location of the pond. The resolution further notes that "[t]he design of access to [the property] using Merritt Land and [the] Driveway Easement rather than crossing Chalkers Mill Pond, eliminates the extraordinary hardship and practical difficulty involved to obtain approval for and to build a structure to cross the Pond." (ROR, Item 35). Moreover, the resolution states that "[t]he proposed access preserves the natural features of the Pond" and "will not have a significant adverse impact on the adjacent house lot in the Merritt Lane Subdivision, or on the adjacent Cahill property." (ROR, Item 35). Lastly, the resolution specifically states that the waiver does not conflict with any Town ordinance or regulation. (ROR, Item 35). Thus, the commission stated the reasons for its decision to grant a waiver of § 6.4.1.
Furthermore, where an administrative agency fails to give the reasons for its decision or the reasons are insufficient to support to the decision, the court must search the record to determine whether it contains substantial evidence from which the ultimate finding could be inferred. See Grillo v. Zoning Board of Appeals, 206 Conn. 362, 369, CT Page 7407537 A.2d 1030 (1988); Connecticut Building Wrecking Co., Inc. v.Carothers, 218 Conn. 580, 601, 590 A.2d 447 (1991). The record supports the commission's approval of the waiver as the commission's engineer specifically stated that "[a] maximum driveway grade of fifteen percent is a common standard that has been adopted by many communities." (ROR, Item 22).
Finally, Cahill argues that the commission incorrectly concluded that the Maynards met the hardship requirement of § 3.4 because they could have negotiated for a right of way over the portion of Merritt Lane that he owns and then over his remaining property. The commission's decision to grant the waiver involved issues of fact solely within its discretion. The court will not substitute its judgment for that of the commission because the commission's stated reasons for granting the waiver of § 6.4.1 adequately support a finding of hardship.
Moreover, the Maynards have no legal right to access their property via Cahill's proposed route. The Maynards acquired the property from Gleason, not Cahill and, thus, appropriately negotiated for a right of way from Gleason. The court declines to hold that the commission's finding of hardship should be overturned because the Maynards could access their property over land to which they have no legal right. Accordingly, the court cannot find that the commission acted arbitrarily, illegally or abused its discretion in granting the request for waiver.[4]
VI. Conclusion:
For the reasons herein stated, it is concluded that Cahill's appeal ought to be and is hereby dismissed.
It is so ordered.
By the court,
 Arena, J.