[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Plaintiffs, George Cooke et al, are the owners of large parcels of undeveloped land that were subject to regulation by the defendant, Planning and Zoning Commission (PZC).
The plaintiffs appeal the PZC's amendment to, Section 4.3.D.2, governing Open Space Planned Residential Districts (OSPRD) dealing with the definition of "density" that excluded or reduced the percentage of certain types of land from the calculation of the minimum lot area required for the purposes of residential development.
The procedural history is not in dispute and is clear from the record. On September 10, 2001, the PZC held a public hearing on the proposed Amendment to Section 4.3.D.2 of the regulations. Legal notice of the meeting was published on August 28th, 2001, September 1st, 2001 and September 4th, 2001 in the Record Journal and New Haven Register. Legal notice was also published in the Hartford Courant on August 28th, 2001 and September 4th, 2001.
The hearing commenced upon September 10th, 2001. At the close of the hearing, a motion was made by Commissioner Fitzsimmons and seconded by Commissioner Seichter to close public hearing on the OSPRD revisions to regulations. The motion was approved unanimously by Commissioner's DiNatale, Fitzsimmons, Seichter, Menard and Whitney. A motion was made by Commissioner Fitzsimmons and seconded by Commissioner Seichter, that: based on the totality of the evidence presented, both at the public hearing and all workshops previously attended by the Planning and Zoning Commission members, and based on the evidence that's been presented, the Commission approve regulation Section 4.3.D.2 of the Zoning Regulations to change the method of calculating maximum density in OSPRD's because it further clarifies and better defines the density calculations and is in support of the Town's Plan of Development by encouraging open space planned residential development. The motion was approved unanimously by CT Page 15277 Commissioner's DiNatale, Fitzsimmons, Seichter, Menard and Whitney.
The PZC held workshops discussing and debating the OSPRD amendment at workshops on the following dates: January 24, 2000 (Record, Ex. 8a), May 22, 2000 (Record, Ex. 8b), July 24, 2000 (Record Ex. 8c), September 25, 2000 (Record Ex. 8d), March 12, 2001 (Record Ex. 8e), May 14, 2001 (Record Ex. 8f), June 4, 2001 (Record Ex. 8g) and July 16, 2001 (Record
Ex. 8g).
Prior to the amendment the subsection read as follows:
2. Density — The maximum density in any OSPRD shall be:
District Maximum Units/Acre
 RU-102 .36 RU-80 .54 RU-40 1.09 R-18 2.4 R-11 3.87 R-6 6.97
 Record, Exhibit 9, p. 42.
The amendment adopted by the PZC replaced the section above with the following language:
2. The total number of proposed dwelling units shall be determined by dividing the total acreage of the tract minus,
a. 50 percent of all wetlands and watercourse area;
b. land with slopes in excess of 25 percent;
c. floodway and floodplain areas;
d. lands subject to floodplain easement for above-ground public utility transmission lines;
 by the conventional minimum lot size for the district in which the tract is located.
Record, Exhibit 1.
The Plaintiffs claim that in it's the decision to approve the CT Page 15278 amendment, the PZC acted illegally, arbitrarily, capriciously and in abuse of discretion vested in it that:
a. The amendment is contrary to the comprehensive zoning plan the town of Wallingford, and thereby violates Connecticut Gen. Stat. § 8-2
and;
b. The PZC did not provide any reasons for the adoption of said Amendment, which reasons represent a rational relationship between said Amendment, which reasons represent some important health, safety and/or welfare issue specific to the Town of Wallingford.
 Aggrievement
The court must first address the issue of aggrievement. East Side CivicAssn. v. Planning and Zoning Commissioner, 161 Conn. 558, 559 (1971); Park City Hospital v. CHRO, 14 Conn. App. 413, 417 (1988), aff'd,210 Conn. 697 (1989).
The plaintiffs allege that they are aggrieved pursuant to General Statutes § 8-8 (a)(1) because they own property that is involved in the decision of the PZC. They are also "classically" of aggrieved because the decision adversely effects their property rights. See, Exhibit 5
The plaintiffs have pleaded and presented testimony before the PZC that they are the owners of property containing wetlands, watercourses, and slopes in excess of 25 per cent located in the zones affected by the amendment. In addition, they have presented evidence through Mr. Dodes, the plaintiffs' planning consultant, that the property owners will suffer a reduction in the number of allowable lots on their property as a result of the amended regulation.
"Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) Hallv. Planning Commission, 181 Conn. 442, 445 (1980). "The question of aggrievement is one of fact to be determined by the trial court."Glendenning v. Conservation Commission, 12 Conn. App. 47, 50 (1987), appeal dismissed, 205 Conn. 802 (1989). "Pleading and proof of aggrievement [are] prerequisites to the trial court's jurisdiction over the subject matter of [this] appeal." Walls v. Planning ZoningCommission, 176 Conn. 475, 479 (1979).
"Aggrievement falls within two broad categories, classical and statutory." (Internal quotation marks omitted.) Cole v. PlanningCT Page 15279 Zoning Commission, 30 Conn. App. 511, 514 (1993). "Statutory aggrievement exists by legislative fiat, which grants appellants standing by virtue of a particular legislation, rather than by judicial analysis of the particular facts of the case." Id., 514-15. The applicable statute is General Statutes § 8-8 (a)(1) which defines an aggrieved person as:
 [A] person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, "aggrieved" any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board.
Pursuant to § 8-8 (a), an owner of real estate abutting or within 100 feet of "land affected by a decision of a zoning board authority has standing to pursue an appeal." Nick v. Planning Zoning Commission,6 Conn. App. 110, 112 (1986).
Aggrievement as defined by the legislature under § 8-8 is "a significant liberalization of the law of aggrievement concerning those who can appeal to court from a decision of a zoning agency." Caltabianov. Planning Zoning Commission, 211 Conn. 662, 668 (1989); TheCaltabiano court noted further that "[b]efore the addition of statutory appellate rights, a person appealing from such a decision had, then as now, an arduous burden to allege and prove so-called classical aggrievement." Finally, the court considered the policy behind statutory aggrievement. 211 Conn. 662, at 636
 It is in light of the formidable barriers to access to the courts for a zoning appeal that we ascertain the legislative intent in granting certain persons statutory aggrievement. We conclude that the legislature presumed as a matter of common knowledge that persons owning property within close proximity to a projected zoning action would be sufficiently affected by the decision of a zoning agency to be entitled to appeal that decision to court. Giving such a right to the narrow class of abutters and those owning property within 100 feet of the land involved would not unduly enlarge the class of those entitled to appeal such a decision. On the other hand, theCT Page 15280 delay, difficulty and expense of proving classical aggrievement would be eliminated.
Id., 668-69; see also Cole v. Planning Zoning Commission, supra,30 Conn. App. 514-15.
Based upon the evidence presented and in light of the applicable authority, the court finds that the plaintiffs are statutorily aggrieved pursuant to § 8-8 (a) as they are owners of property affected by the decision of the commission.
 Scope of Review
The court's scope of review in considering the commission's action is well established. The Supreme Court in Protect Hamden/North Haven fromExcessive Traffic Pollution, Inc. v. Planning ZoningCommission, 220 Conn. 527, 542-44 (1991) reiterated the scope of review:
 We have often articulated the proper, limited scope of judicial review of a decision of a local zoning commission when it acts in a legislative capacity by amending zoning regulations. [T]he commission, acting in a legislative capacity, [has] broad authority to adopt the amendments. . . . In such circumstances, it is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached. . . . Acting in such legislative capacity, the local board is free to amend its regulations whenever time, experience, and responsible planning for contemporary or future conditions reasonably indicate the need for a change. . . . The discretion of a legislative body, because of its constituted role as formulator of public policy, is much broader than that of an administrative board, which serves a quasi-judicial function. . . . This legislative discretion is wide and liberal, and must not be disturbed by the courts unless the party aggrieved by that decision establishes that the commission acted arbitrarily or illegally. . . . ZoningCT Page 15281 must be sufficiently flexible to meet the demands of increased population and evolutionary changes in such fields as architecture, transportation, and redevelopment. . . . The responsibility for meeting these demands rests, under our law, with the reasoned discretion of each municipality acting through its duly authorized zoning commission. Courts will not interfere with these local legislative decisions unless the action taken is clearly contrary to law or in abuse of discretion. . . . Within these broad parameters, [t]he test of the action of the commission is two fold: (1) The zone change must be in accord with a comprehensive plan, General Statutes § 8-2, . . . and (2) it must be reasonably related to the normal police power purposes enumerated in § 8-2 . . .
(Brackets in original; citations omitted; internal quotation marks omitted.)
Under General Statutes § 8-2, the commission regulates, inter alia, to promote health and general welfare." "The concept of the public welfare is broad and inclusive . . . The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean, well-balanced as well as carefully patrolled." Figarsky v. Historic District Commission,171 Conn. 198, 207-08 (1976).
The court examines each of the plaintiffs' claims guided by this law and the pertinent provisions of General Statutes § 8-2. Those provisions read:
 (a) The zoning commission of each city, town or borough is authorized to regulate, within the limits of such municipality, the height, number of stories and size of buildings and other structures; the percentage of the area of the lot that may be occupied; the size of yards, courts and other open spaces; the density of population and the location and use of buildings, structures and land for trade, industry, residence or other purposes, including water-dependent uses as defined in section 22a-93, and the height, size and location of advertising signs and billboards. Such bulk regulations may allow forCT Page 15282 cluster development as defined in section 8-18. Such zoning commission may divide the municipality into districts of such number, shape and area as may be best suited to carry out the purposes of this chapter; and, within such districts, it may regulate the erection, construction, reconstruction, alteration or use of buildings or structures and the use of land. All such regulations shall be uniform for each class or kind of buildings. structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. Such regulations shall be made in accordance with a comprehensive plan and in adopting such regulations the commission shall consider the plan of conservation and development prepared under section 8-23. Such regulations shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. . . .
As to the plaintiffs' claim that the amendment does not conform with the plan of conservation and development, the court disagrees. The remarks of the commissioners at the public hearing do not limit the court's determination. "The principle that a court should confine its review to the reasons given by a zoning agency does not apply to any CT Page 15283 utterances, however incomplete, by the members of the agency subsequent to their vote. It applies where the agency has rendered a formal, official, collective statement of reasons for its action." ProtectHamden/North Haven v. Planning and Zoning, supra, 220 Conn. 544. Accordingly, the court must review the record for substantial evidence to support the amendment. It has done so and finds that the amendment is supported by the articulated goals and recommendations of the plan, the zoning regulations as well as the statements of the commissioners at the workshops. (Record, Ex 8a-h, 9, 10)
As noted in the Wallingford Zoning Regulations Section 5, Open Space:
A. The Commission recognizes that one of the Town's assets is it's varied and unique physical features and open space. It is necessary to preserve these natural assets by encouraging development techniques which will accomplish the objective of preserving this asset. Open space in OSPRD must accomplish one of the following objectives:
1. preserving land as common open space to preserve or enhance the appearance, character, and natural beauty of the area.
2. the serving land to serve park and recreational needs;
3. preserving land for purposes of conserving natural resources;
4. preserving and protecting particular areas and terrain having qualities of natural beauty and historic interest;
5. protecting streams, rivers and ponds so as to avoid flooding, or erosion, and water pollution.
6. preserving and protecting agricultural areas as a historical use of land in Wallingford.
7. preserving open space to replicate a traditional New England green.
8. providing larger open space areas by laying out new open space contiguous to existing open space on adjacent parcels.
(Record, Exhibit 9, pg. 42-43).
The regulation set forth the purpose of OSPRD in § 4.3.A, which provides as follows:
A. Purpose: the OSPRD is intended: CT Page 15284
 1. to expand the choice of housing in the town of individual lots and structures to the planning and development of larger areas with groups of structures erected as a coordinated entity and;
 2. to preserve and make available open space for conservation, preservation of natural resources, farmland, recreation, wildlife habitat, and maintaining the world New England flavor a wall inter Wallingford.
(Record, Exhibit 9, pg. 41).
The PZC discussed the issue of the density of OSPRDs together with the quantity and quality of open space in eight workshops prior to the public hearing on the amendment (Record, Exhibit 8a-8h). At the first workshop Commissioner Seichter stated that the current OSPRD regulations were "generous" because wetlands were not excluded from the density computation and that the prior regulations excluded wetlands from the computation (Record, Exhibit 8a, pg. 3).
At the second workshop, the PZC continued their discussion to debate regarding density and open space requirements in OSPRD's (Record, Exhibit 8b). It is clear that the commissioners were dissatisfied with the quality of open space and the fact that existing open space was primarily wetlands (Record, Exhibit 8b, p. 3).
The PZC's debate over density and open space requirements was continued at the July 24th 2000 workshops (Record, Exhibit 8c.). At that workshop the Assistant Town Planner said that eliminating wetlands and steep slopes from the OSPRD calculation would not remove the incentive to develop open space subdivisions (Record, Exhibit 8c, p. 4). The issues of density bonuses and reductions and open space requirements were discussed with disfavor by PZC (Record, Exhibit 8c. pp. 8-7).
During the May 14th 2001 meeting the PZC indicated that several regulations, including section 4.3.D.2 needed some fine-tuning (Record,
Exhibit 8f, p. 17). The regulations under consideration for fine tuning all involved open space (Id at 16 — 20).
The PZC's June 4th 2001 workshop continued this discussion (Record,
Exhibit 8c). The proposed amendment would result in a tightening of the density calculation and fewer units (Record, Exhibit 8g, p. 1). Chairman Whitney stated that subtracting all the wetlands was too harsh and suggested that only 50% was necessary. Ibid. The PCZ and the public discussed various opinions on the density issue as well as the pros and CT Page 15285 cons of OSPRD developments (Record, Exhibit 8g. pp. 1-3).
Because the amended regulation is reasonably related to the articulated and legitimate goal of balancing development and conservation, it does not lack a rational basis.
 CONCLUSION
Under its limited scope of review, this court cannot substitute its judgment for that of the commission. There is ample evidence to support the PZC's decision and because there is nothing in the record to indicate that the PZC acted illegally or arbitrarily or that the PZC action is contrary to the comprehensive zoning plan of the Town of Wallingford, the appeal is dismissed.
 ___________________________ Holly Abery-Wetstone, Judge
CT Page 15286